The People of the State of Illinois, Plaintiff-Appellee, v. Lawrence B. Fairbanks, Defendant-Appellant.

Gen. No. 11,720.

Second District, First Division.

December 6, 1963.

Berry & O'Conor, of Ottawa, and John J. Wosik, of Henry, for appellant.

O. B. Pace, Jr., State's Attorney, of Marshall County, for appellee.

McNEAL, P. J.

A jury found the defendant, Lawrence B. Fairbanks, guilty of cruelty to animals and guilty of failing to dispose of the carcasses of deceased animals, as

charged in Counts I and II of an information. The County Court of Marshall County entered judgment on the verdicts, denied defendant's motion for a new trial, and imposed fines of $100 and $350 on the respective counts. To reverse these convictions defendant appealed.

Count I of the information charged in substance that on March 10, 1962, defendant violated § 221, c 8, Ill Rev Stats 1961, in that he unnecessarily failed to provide fourteen cattle in his charge or custody as owner, with proper food, drink and shelter, and as a result thereof the cattle died. Count II charged that prior to March 10, 1961, fourteen head of cattle died while in defendant's care, and that he allowed the carcasses to lie about his premises and failed and neglected to dispose of the carcasses within 24 hours after death, contrary to the provisions of § 165, c 8, Ill Rev Stats 1961.

Appellant makes no complaint with reference to the admission or rejection of evidence, the instructions, or the conduct of court or counsel. His sole contention on appeal is that the evidence was insufficient to sustain a finding of guilty beyond all reasonable doubt under either count of the information.

The evidence disclosed that defendant resided at Henry, Illinois. He owned substantial acreages in Hopewell and Roberts Townships in Marshall County, and he used these acreages for many years in raising and pasturing livestock. He employed a method of feeding and pasturing cattle known as "the dry standing roughage type of feeding operation." On December 22, 1961, he moved about 150 head of cattle from his pasture in Hopewell Township a distance of four or five miles to three or four hundred acres of permanent pasture lying along the west side of a north-south road in Roberts Township. On this land there

was a farmhouse which had been vacant for several years, and a 60 x 40 foot barn filled with baled hay.

On the day the cattle arrived in Roberts Township it commenced to snow. Throughout the rest of the winter and until the middle of March, 1962, there was unusually heavy snowfall and the weather was exceedingly cold. A number of witnesses said that the winter was the most severe of any in the last fifteen years.

After arrival in Roberts Township the cattle were fed 70 to 75 bales of hay a day out of the barn. By January 2, 1962, ⅞ of the hay in the barn had been used. Then for a couple of weeks defendant hauled about 70 bales a day from another barn near Henry to the pasture in Roberts Township to feed the cattle there. About January 11 or 12 and again three days later he attempted to drive the cattle back to Hopewell Township. He and others testified that they were unable to drive the cattle back on account of weather conditions. Defendant then turned the cattle into an unharvested corn field of about eight acres and a twenty-acre stalk field. He admitted that he hauled no hay to the cattle after January 15, that he lost a cow in late December, and that by January 16 eleven animals were dead. The cattle remained in the corn and stalk fields until February 15, when defendant made a third attempt to move the cattle back to the pasture in Hopewell Township. Finally on February 16 all of the remaining animals were driven to the acreage in Hopewell Township.

Sheriff Berg, Deputy Evans and two others went to defendant's land in Roberts Township on March 13, 1962. As he approached the premises from the south the sheriff testified that he saw six dead cattle from the road. From the farm gate he noticed dead cattle, one eaten by rodents, in the yard of the vacant house,

and upon further examination he found calves, yearlings and young cows up to 5 or 7 years lying out in the pasture. Altogether he counted fourteen. Photographs of some of the dead cattle appear in the record. Through the cracks in the barn the sheriff saw three or four feet of hay, but the doors could not be opened because they were wired shut and frozen in that position. There was no evidence of feed for cattle except that locked in the barn. The small corn field was clean. There were no tanks, troughs or other facilities for water. Mr. Berg had been sheriff for 4 years. Before serving as sheriff he had been on a farm for 32 years and had occasion to feed and handle livestock. Based upon his experience, it was the sheriff's opinion that the death of the cattle was caused by the lack of food, water and shelter.

On March 14 when the sheriff delivered the capias in this case to Mr. Fairbanks, he asked him about the carcass in the basement of the house. Defendant said that the cow was sick and he put her down there and thought she would get better. On the trial it was defendant's contention that the carcasses were not removed because they were frozen to the ground, the hide would have stuck and made a disagreeable mess, and that from January 1 until the middle of March the weather condition and temperature was constant cold and "not a single day of thaw in these parts."

In response to a call by Mr. Fairbanks on March 17, Alfred Lucke went to the premises on March 18. As he approached the farm from the south, Mr. Lucke saw a lot of dead cattle in the yard. He had a 2-ton truck equipped with a 150-foot winch and a gate for sliding the dead stock into the truck. Lucke retrieved 16 carcasses averaging 350 to 400 pounds each—the least was a calf of about 100 pounds and the heaviest a cow of 700 to 800 pounds. Lucke testified that he had

334

no difficulty loading, and that in his opinion, the cows had been dead about two months. He removed the carcasses to the Galesburg Rendering Plant.

A meteorologist called in rebuttal by the prosecution testified that the daily high temperatures at the Peoria Airport between February 11 and 18, 1962, were 43, 41, 49, 37, 35, 34, 33 and 36 degrees, and between March 8 and 13 the high temperatures were 33, 36, 36, 44, 36 and 37 degrees; and that the temperatures would not vary much 35 miles from Peoria.

The record in this case contains evidence upon which the jury could have concluded that the defendant permitted sixteen head of cattle to starve to death and that he permitted their carcasses to remain on his premises for more than two months. The evidence established defendant's guilt as charged in both counts of the information, beyond any reasonable doubt.

The law charges the jury with the responsibility of determining the credibility of the witnesses and the weight to be given their testimony. We will not substitute our judgment for that of the jury merely because the evidence is conflicting. Further, we will not reverse a judgment of conviction on the ground that the evidence is insufficient to sustain the finding of guilt unless it can be said that there is clearly a reasonable and well-founded doubt of the guilt of the accused and the verdict is palpably contrary to the weight of the evidence. People v. Perroni, 14 Ill2d 581, 592, 153 NE2d 578. In this case the evidence is sufficient to sustain the conviction. Accordingly the judgment of the County Court of Marshall County is affirmed.

Affirmed.

DOVE and SMITH, JJ., concur.