(No. 38424.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* NELS
J. JOHNSON, Appellant.

*Opinion filed September 29, 1964.*

RAYMOND L. JONES, of Chicago, (JOHN R. JEFFERS, of
counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield,
and DANIEL P. WARD, State's Attorney, of Chicago, (FRED
G. LEACH, Assistant Attorney General, and ELMER C. KIS-
SANE and WILLIAM J. NELLIS, Assistant State's Attorneys,
of counsel,) for the People.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of
the court:

On a 1962 complaint signed by a labor union official, an

employer, Nels J. Johnson, hereinafter called defendant, was charged with the crime of advertising for employees during a strike without stating in the ad that a strike was in progress. He was tried without a jury in what was then the municipal court of Chicago, found guilty and fined $100. He appeals directly to this court, contending that the statute making it a crime to so advertise is unconstitutional, and also that the evidence is insufficient to sustain the conviction.

Defendant operates a tree service business having about 50 employees. On June 12, 1962, he ran a want-ad in a Chicago newspaper as follows: "Tree Trimmers—Experienced, Year 'Round—Gr 5 1877." In September 1961, a Chicago local of the Teamsters Union had tried without success to unionize the business, and in succeeding months had picketed its office from time to time.

The statute in question declares that "No employer shall advertise seeking to hire employees to replace employees on strike or locked out during any period when a strike or lockout is in progress, * * * unless it shall be stated in such advertisement that a strike or lockout is in progress at such place of business." It is further provided that persons convicted of violating the statute shall be fined not less than $100 nor more than $300 for each violation, and that each day the ad appears shall be deemed a separate offense. Ill. Rev. Stat. 1961, chap. 48, pars. 2c and 2d.

Defendant attacks the validity of the act on several grounds—namely that it makes an unreasonable classification, denying employers equal protection of the laws, that its provisions are vague and indefinite, contrary to due process, and that it deprives employers of the right of free speech—but on this record we do not reach the constitutional questions. The evidence in our opinion fails to prove that the advertisement was published while a strike or lockout was in progress, and for that reason the conviction cannot stand.

It is undisputed that on September 19, 1961, an organizer presented defendant with 35 union applications signed by

employees and tried, without success, to get him to enter into a union contract. When defendant declined to do so the union got some pickets in front of his office. The picketing continued until the time the advertisement appeared on June 12, 1962. During the interim a number of employees whom defendant had discharged in September went back to work, as did many who had stayed away or been stopped by the union from going to work. According to the payroll records the number of employees increased from 46 on September 15, 1961, to 52 on June 12, 1962. Only one employee, Ernesto Flores, testified to having participated in the picketing. Neither he nor any other witness said who, if any, of defendant's employees were on strike when the ad appeared. The picket sign did not indicate that the employees were on strike or locked out, but proclaimed only that defendant was "unfair" and refused to bargain with the union. The People admit that 21 employees who had quit work or who had been discharged in September 1961, returned prior to June 12, 1962. It is urged, however that there are 25 others who are unaccounted for, and that some of these must have been among the pickets.

It does not appear whether the missing former employees were on strike, or whether they had gone elsewhere by June 12, 1962, or had returned to work and then quit during the interval. None were called to testify, although if any were on strike it would presumably have been a simple matter to produce them as witnesses. The union official who was called on behalf of the prosecution did not know if any were members of the union on June 12, 1962, or how many had gone back to work. As we have indicated, the number of employees working at the time of the advertisement was in fact larger than the number just prior to the dispute.

Where a criminal offense is charged the burden rests upon the prosecution to prove its case beyond a reasonable doubt. The presumption of innocence is not overcome by speculation, or by probabilities, and where the evidence is

such as fairly permits an inference consistent with innocence it will not support a conviction. (*People* v. *Blair,* 266 Ill. 70.) To be sustained the conviction must rest upon the strength of the People's case, not on the weakness of defendant's (*People* v. *Coulson,* 13 Ill.2d 290,) and where conditions may be explained on a hypothesis of innocence it is the duty of the court to accept that explanation. *People* v. *Gregor,* 359 Ill. 402.

In this case the People clearly failed to prove the existence of a strike, as charged in the information, at the time the advertisement appeared. The fact that there may have been picketing, or a "labor dispute" with the union, is not sufficient. The statute says "strike or lockout," and it must be proved that a strike or lockout was in progress before an accused can be properly convicted thereunder.

Upon facts very similar to those in the case at bar a conviction was reversed by the Wisconsin Supreme Court in (*West Allis Foundry Co.* v. *State,* 186 Wis. 24, 202 N.W. 302.) Like that of Illinois the Wisconsin statute made it unlawful to induce employees to engage in service by failing to state, in advertising for help, "that there is a strike or lockout at the place of the proposed employment, when in fact such strike or lockout then actually exists in such employment at such place." In October, 1923, the defendant company gave notice of a proposed cut in wages. Thereafter some of its employees ceased work and began picketing, at the direction of a labor union to which they belonged. On February 27, 1924, the company ran a newspaper ad for moulders without stating there was a strike at its place of business. In the meantime some of the picketing men had obtained employment elsewhere, and at the time of the ad only one of the men who had ceased work in October was still picketing, although two who had quit and did not return were also picketing. It further appeared that when the ad was published more men were employed by the company than had been working in October.

In reversing the conviction the court pointed out that it was necessary for the State to prove the existence of a strike at the time of the advertisement and that a strike is concerted action by employees, not a mere dispute with a local union having no contract with the company. After observing that the employees who stopped work in October were lawfully exercising their rights, the court continued: "It is the concerted withdrawal, however, of such employees that makes the strike. Picketing and persuading others to keep away from such employment are but incidents of and not the strike itself. At the time of the advertisement in February, 1924, the force or economic pressure that had been exerted on the employer by such withdrawal was no longer in existence. At such time the employer had more than a normal and usual force of men and more than the normal and usual force of core makers and moulders at work."

A similar conclusion must follow here. The court below erred in finding that guilt had been sufficiently proved and in overruling defendant's motion to vacate the judgment. For the reason stated the judgment is reversed.

*Judgment reversed.*