People of the State of Illinois, Plaintiff-Appellee, v. William DiVito, Defendant-Appellant.

Gen. No. 50,044.

First District, Third Division.

January 6, 1966.

R. Eugene Pincham and Charles B. Evins, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Stuart P. Shapiro, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This involves an appeal from a judgment finding the defendant guilty of the offense of robbery by force. The defendant was sentenced to the Illinois State Penitentiary for a term of 1 to 5 years. The trial was by the court without a jury.

The defendant's only point on this appeal is that since he had been a guest in an apartment previous to the commission of a robbery therein, the discovery of the defendant's fingerprint in the apartment after the commission of the robbery does not establish that the defendant committed the robbery.

The testimony on behalf of the State was as follows: On the afternoon of June 23, 1963, one William Orlach was in the apartment located at 2633 South Harding Avenue with Jerry Bures, the complaining witness. Jerry Bures was the tenant of the apartment at 2633 South Harding Avenue. Orlach and Bures had been friends for about two years. About 1:15 in the afternoon the doorbell rang and Bures opened the door and saw two men standing outside. One of the men immediately hit him in the eye. The other man choked him and threw him to the floor. One of the men said to Bures, "Just don't move or we will give it to you." Bures laid on the floor for about one hour and when he heard no more noise he got up and saw that his apartment had been ransacked. Jewelry and money were missing from the apartment. The police were called and

when they arrived Orlach was still in the apartment and gave his address to them. A metal box which Bures kept on an upper shelf in his den was found laying open on the dining room table after the robbers had left the apartment. The police officer took fingerprints from numerous places, including the metal box on the table. The testimony of police officers established that a fingerprint of one thumb which was taken from the metal box on Bures' dining room table was identical to the fingerprint of the defendant's thumb.

William Orlach was not called as a witness by the State.

Bures did not prior to or at the time of the trial identify the defendant as one of the persons who robbed him.

The prosecuting witness Bures was asked the following questions and made the following answers to them: "Q. All right, do you ever *recall* seeing that man (indicating the defendant) before the 23rd of June of 1963?" Witness: "No, I don't." Mr. Leahy: "Q. Do You ever *recall* seeing this man before . . . when was the first time you *recall* seeing this man? Let me ask you that? A. When I came to Judge Ryan's chambers way back when for the arraignment, that's all. Q. You don't *recall* seeing Mr. DeVito at any time prior to going to Judge Ryan's chambers or courtroom? A. No, sir."

The defendant testified to the following facts: He was an insurance salesman for Franklin Life and New York Life Insurance Company. He also did construction and remodeling work. He met the complaining witness Jerry Bures in May or June of 1963 in the Cherry Lounge in the 2500 block on South Pulaski. The defendant and Bures engaged in conversation at the bar of the lounge and the conversation eventually got around to tax figures. The defendant had just completed a tax form and was complaining about what he had to pay. They discussed the amount of the tax the defendant had paid for the last quarter of 1962. Bures told the defendant, "It's

too bad that I hadn't known you before, because that's my business," meaning that he could have helped the defendant. A few days later the defendant again saw Bures in the same lounge. Bures claimed he was an income tax accountant. Bures suggested that the defendant stop by his home and Bures would see what the defendant should or should not have done about his income tax, and what Bures could possibly do for him. Bures told the defendant to bring his records with him. About ten or fifteen days later the defendant went to Bures' apartment. It was before June 23rd. He arrived there at 6:30 or 7:00 o'clock in the evening. Bures had given the defendant the specific hour when to come. The defendant took with him to Bures' house records of his automobile expenses, insurance premiums, his living expenses and a couple of losses he had sustained. The interior of the apartment was a normal five or six room apartment. Bures and the defendant had one or two drinks of alcoholic beverages. Bures sat right beside the defendant at the table in the dining room and examined defendant's papers. The table was cluttered with various objects, envelopes, cartons, cigarettes, boxes and whiskey bottles and things of this type. The testimony of the defendant showed that the apartment was littered and ill-kept. After one or two drinks, Bures started making immoral advances toward the defendant and the defendant got up and walked out.

The defendant denied that he was in Bures' apartment on June 23, 1963, and denied the commission of or any participation in the robbery of Bures.

After the defendant's testimony the defendant rested his case. The Assistant State's Attorney thereupon said the following to the court:

"Mr. Leahy: All right, judge, if I could have about three minutes I will have some rebuttal."

The court then declared a recess. The State did not present or offer any rebuttal testimony.

The complaining witness Jerry Bures, the victim of the robbery, never identified the defendant as one of the persons who robbed him. William Orlach, a friend of Bures for about two years, was present in the apartment during the entire one hour while the robbery was being committed. Although Orlach gave the police officers his address he was not called as a witness and did not testify at the trial. There was no testimony that he was not available or that any effort had been made to locate him, or that efforts to locate him were unsuccessful.

The State argues that the disputed testimony in the case at bar was not whether there was a valid identification of the defendant. The conflict arose solely on the basis of the defense pleaded before the court. Mr. Orlach could not lend credence to the testimony of either individual since his presence was not asserted at any of the alleged meetings and conversations upon which defendant relied in his defense, therefore substantial reason is thus lacking upon which to base defendant's claim that the State's failure to call Mr. Orlach should result in an inference to be weighed against the contention of the State to wit: that defendant was proved guilty beyond a reasonable doubt by sufficient and competent evidence. The State, however, overlooks the fact that Mr. Orlach was in the apartment for more than a full hour during the course of the robbery, during which time he, no doubt, observed the robbers. The inference might well be that Orlach had seen the robbers and would have testified that the defendant was not one of them.

In People v. Strong, 21 Ill2d 320, 325, 172 NE2d 765, 768, the court said: "While the State was not obligated to call Reynolds (People v. Aldridge, 19 Ill2d 176, 166 NE2d 563), the unexplained failure to do so may give rise

to an inference against the State. Morei v. United States, (6th Cir) 127 F2d 827, 830."

It is not explained in the State's brief why the State's Attorney did not ask Bures, the complaining witness, if he had ever seen the defendant prior to the time of the robbery. The complaining witness was asked only whether he *recalled* having seen the defendant prior to the time of the robbery.

After the defense had rested its case, and the State had requested a few minutes and that then it would proceed with its rebuttal, the prosecutor did not present any rebuttal testimony. Bures could have cleared up many questions which present themselves to this court. Did the testimony of the defendant refresh the recollection of Bures as to whether he had ever seen the defendant prior to the commission of the robbery? Had Bures been in the Cherry Lounge on the occasions testified to by the defendant and did he meet the defendant in the Cherry Lounge? Did Bures invite anyone to his home while in the Cherry Lounge? Did Bures discuss income taxes with anyone while in the Cherry Lounge? Was Bures a tax accountant? How could defendant have known that Bures was a tax accountant except for the fact that Bures told him? Was Bures an accountant? Was the metal box, which was normally kept on the upper shelf in the den, on the dining room table at the time the defendant testified he was in Bures' apartment discussing tax matters? Why did not Bures deny that he had made improper and immoral advances toward the defendant, or any other person in his apartment prior to the commission of the robbery?

The evidence did not disclose the location of the metal box on the day the defendant claimed to have visited with Bures in his apartment. The evidence does not disclose whether the box was on the dining room table when the defendant was there except for the testimony

of the defendant, who testified that among many other things there were boxes on the dining room table.

In People v. Johnson, 31 Ill2d 321, 323, 201 NE2d 367, 369, our Supreme Court said:

> "Where a criminal offense is charged the burden rests upon the prosecution to prove its case beyond a reasonable doubt. The presumption of innocence is not overcome by speculation, or by probabilities, and where the evidence is such as fairly permits an inference consistent with innocence it will not support a conviction. . . . and where conditions may be explained on a hypothesis of innocence it is the duty of the court to accept that explanation."

The State's evidence did not establish that the metal box was inaccessible or was not on the dining room table when the defendant, according to his testimony, was in the apartment prior to the time of the robbery. It is a reasonable hypothesis to assume that the fingerprint of the defendant might have been placed on the metal box when the defendant, according to his testimony, visited with Bures. Furthermore, the testimony of the prosecuting witness was to the effect that the metal box was also used by his mother, who was the treasurer of many "affairs." It cannot, therefore, be said that the metal box was at all times on the upper shelf in the den. The complaining witness, himself, testified that he had a den where he kept most of his things, and that he kept the metal box on an upper shelf in the den, however, he did not testify as to whether the metal box was or was not on the dining room table on the day the defendant stated he had visited with the complaining witness.

The State cites the case of People v. Taylor, 32 Ill2d 165, 204 NE2d 734, in support of the contention that the evidence in this case is sufficient to prove the crime. In the Taylor case the victim of the crimes testified that she heard a noise in the kitchen and when she went to the kitchen to investigate she saw a man stepping off

the sink into the kitchen. The victim was unable to identify the defendant but the defendant's fingerprints were found on the inside of the lower window sash of the kitchen window. The fingerprint expert testified that the prints on the inside of the window were the defendant's. The defendant in that case testified in his own behalf but he did not attempt to explain the presence of his fingerprints on the window. The court there concluded that the unexplained presence of the defendant's prints on the inside of the window is not consistent with any reasonable hypothesis of innocence. We do not believe that the Taylor case is controlling in this instance. The defendant in the instant case explained his presence in the apartment of the complaining witness a short time before the robbery and that among other things there were boxes on the dining room table at the time.

■ The well established rule is that before a conviction can properly be had on circumstantial evidence alone, the guilt of the accused must be so thoroughly established as to exclude any reasonable hypothesis of his innocence. People v. Heep, 302 Ill 524, 135 NE 64.

In Anthony v. State, 85 Ga App 119, 68 SE2d 150, 152, the court said:

> " 'To warrant a conviction, however, the finger prints corresponding to those of the accused must have been found in the place where the crime was committed, under such circumstances that they could only have been impressed at the time when the crime was committed.' 16 ALR Annotation, P 370."

Also see State v. Minton, 228 NC 518, 46 SE2d 296.

■ The evidence in the instant case creates a reasonable doubt of the guilt of the defendant and the judgment therefore must be reversed.

Reversed.

SCHWARTZ and DEMPSEY, JJ., concur.