THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID D. LAWRENCE, Defendant-Appellant.

(No. 53965;

First District—April 16, 1971.

514

Gerald W. Getty, Public Defender, of Chicago, (Harold A. Cowen, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Arthur Belkind, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant was charged with the crimes of aggravated battery and attempted robbery. In a jury trial defendant was found guilty only of attempted robbery. He was sentenced to a term of five to fourteen years. In addition, defendant was found in contempt of court for his conduct during the trial and sentenced to a term of one year. The sentences were to run concurrently.

On appeal defendant contends: (1) that he was not proved guilty beyond a reasonable doubt, and; (2) that the court erred in failing to conduct a competency hearing.

On April 18, 1968, defendant entered a jewelry store and asked to see a certain $295.00 watch which was in the window of the store. James Wittgren, the son of the store owner, took the watch from the window to show it to the defendant. Defendant then asked to see a ring which would match the watch. James Wittgren placed the watch on a back counter and went to get the ring. While James Wittgren was showing the defendant the ring a second man entered the store and asked to see the watch previously requested by defendant. Jack Wittgren, the owner of the store, showed the watch to this second man. At the same time a third man, later identified as Michael Matthews, pointed a gun at the face of Jack Wittgren. Jack grabbed for the gun and in the ensuing struggle was shot. All three men ran from the store and down the street together. James grabbed his father's gun and gave chase.

As James emerged from the entrance of the jewelry store he saw a police car. He called to the officers in the car as he pointed out the trio running down the street. The police car entered into pursuit of the men. The officers saw the men turn a corner and then lost sight of them. The officers proceeded to the next intersection and there saw the defendant standing next to a car that was partially pulled away from the curb. The car moved toward the police, leaving defendant standing in the street. The police stopped the car and at that time defendant shouted to the officers that the driver was a friend of his and that the three sought by the policemen had run through the alley. Defendant and the driver of the car were then arrested. A later search of the vehicle uncovered a jacket which contained identification of Michael Matthews who was later identified as the wielder of the gun. At the time of his arrest defendant

was wearing blue coveralls which covered a second set of clothes complete with alligator shoes.

The attorney representing defendant at trial was the fifth attorney to represent defendant since his incarceration. Defendant attempted to change attorneys again but the court denied his motion. During the trial defendant directed accusations at his counsel and the court. His continued outbursts led the trial judge to exclude defendant from the trial.

On the last day of the trial the attorney for defendant brought out the fact that the defendant had been a voluntary patient at the Manteno Mental Institution for approximately twelve days in 1967. It was also pointed out, by the State, that defendant was satisfactorily discharged from that institution. Counsel for defendant then requested a competency hearing. This request was denied.

After the verdict was rendered the Court indicated that there was not enough evidence in the record to raise a *bona fide* doubt of defendant's competency. However, the Court did order a Behavior Clinic examination of the defendant at the conclusion of the trial. This report definitely indicated that defendant was competent to stand trial. .

Defendant's first contention on appeal is that the State failed to prove him guilty beyond a reasonable doubt. Defendant cites *People v. Di Vito* (1966), 66 Ill.App.2d 282 at 288 in support of the proposition that "* * * where the evidence is such as fairly permits an inference consistent with innocence it will not support a conviction * * * and where conditions may be explained on a hypothesis of innocence it is the duty of the court to accept that explanation." In this connection defendant argues that the evidence is consistent with the explanation that he was present in the store as a customer and that his flight from the scene was merely to escape the gunfight at the jewelry store. Defendant also contends that doubt is raised as to whether he ran with the other two men by a variance between the testimony of Officer Johnson who stated that defendant was the last of the men running down the street and the testimony of James Wittgren who stated that defendant was at the head of the group.

■■ We believe that the language of this Court in *People v. Irvin* (1968), 104 Ill.App.2d 316 at 326 is the appropriate response to defendant's contention:

"The requirement that guilt of the defendant be proved beyond a reasonable doubt does not mean that the trial judge or jury, as the case may be, must disregard inferences that naturally flow from evidence, and the trier of fact is not required to search out the series of

potential explanations compatible with innocence and elevate them to the status of reasonable doubt. *People v. Beckham,* 71 Ill.App.2d 357, 219 N.E.2d 139.

The mere fact that there was conflicting testimony or alternative explanations of conduct is not incompatible with proving the defendant guilty beyond reasonable doubt. (*People v. Hatch,* 49 Ill.App.2d 177, 199 N.E.2d 81.) Where there is conflict in evidence, conclusions and inferences to be drawn therefrom rest completely upon which witnesses the jury chose to believe. (*People v. Galloway,* 28 Ill.2d, 355, 192 N.E.2d 370.) The jury chose to believe the State's witnesses. Rejections of the defense's witnesses does not create a reasonable doubt. The State's evidence was not so unbelievable or unreliable as to create a reasonable doubt."

Defendant's asking for the same watch the others asked to see, his running from the store and down the street with the others, his attempt to divert the attention of the police officers from the car which contained the identification of the gun-wielding Matthews and defendant's double set of clothing could reasonably lead a jury to draw the inference that defendant was an integral member of the team which attempted the robbery.

■■ The defendant next contended that the court erred in denying a competency hearing. Ill. Rev. Stat. 1967, ch. 38, par. 104—1 provides in relevant parts:

"For the purpose of this Article, 'incompetent' means a person charged with an offense who is unable because of a mental condition:

(a) To understand the nature and purpose of the proceedings against him; or

(b) To assist in his defense; * * *."

The issue thus is whether the defendant understood the nature and purpose of the proceedings against him and whether he was able to assist in his defense. It is fundamental that the trial of an incompetent is a violation of his constitutional right of due process. However, before the trial court must impanel a jury and conduct a hearing as to the defendant's competence the court must have a *bona fide* doubt as to the competency of that defendant. Ill. Rev. Stat. 1967, ch. 38, par. 104—1.

The defendant relies on the fact that he was a voluntary patient in a mental institution for twelve days. This he contends is a factor that could create a *bona fide* doubt as to his competency to stand trial.

■■ The mere fact that one was once under psychiatric care does not raise a *bona fide* doubt as to his competency to stand trial. (*People v. Hall* (1970), 45 Ill.2d 547.) Even the fact that defendant was adjudi-

cated mentally ill prior to the trial was not sufficient evidence to raise a *bona fide* doubt as to the defendant's competency at the time of the trial in spite of the fact that there had been no restoration order. *People v. Barkan* (1970), 45 Ill.2d 261.

■■ The defendant's voluntary enrollment and subsequent satisfactory discharge from the Manteno institution for twelve days certainly does not, of itself, raise a *bona fide* doubt concerning his competency to stand trial. See *People v. Harris* (Ill.Sup.Ct., April 1, 1971), No. 42599.

The defendant also contends that his conduct during the trial indicates his incompetency. He argues that his disruptive behavior and accusations directed toward the court and his attorney raise a *bona fide* doubt as to his competency.

■■ The matter must be determined with respect to the tests that the legislature has established. Certainly there was every indication the defendant knew the nature of the proceedings against him. He prepared motions, addressed the court numerous times and even prepared a notice of appeal. Aggressive behavior on the part of the defendant in the courtroom is not enough to raise a *bona fide* doubt of competency. While the behavior of the defendant was certainly reprehensible it was not of such a character as would necessarily raise doubt of his competency.

As to the defendant's ability to assist in his own defense it is shown in the record that he desired further consultation with his attorney. He gave the attorney information and attempted to tell the attorney where to find his employer or at least where information could supposedly be obtained that would lead to the location of his employer. Certainly he assisted in his own defense.

Judgment affirmed.

ENGLISH, P. J., and DRUCKER, J., concur.