THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN W. RAY, JR., Defendant-Appellant.

Third District   No. 79-867

Opinion filed May 7, 1980.

Robert Agostinelli and Stephen Omolecki, both of State Appellate Defender's Office, of Ottawa, for appellant.

James Hinterlong, State's Attorney, of Ottawa (Gary R. Garretson, Assistant State's Attorney, and John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

After trial by jury in the circuit court of La Salle County, John W. Ray, Jr., the defendant, was found guilty of the offenses of burglary and theft. The defendant was sentenced to concurrent terms of four years and six months for the burglary offense and three years for the theft offense.

A number of issues are presented for review, the first of which we consider is whether the defendant was proved guilty beyond reasonable doubt. The determination of this issue necessitates a detailed recitation of the evidence adduced at trial.

The composite testimony of witnesses established that on May 12, 1979, at approximately 10 p.m., the defendant because of unruly conduct was removed from a bus in Mendota, Illinois. He had been traveling from Salt Lake City (destination Boston) with a young lady, Karen Hoffman, who voluntarily left the bus with him. The occupation of Hoffman was that of a legal prostitute in the State of Nevada. On the bus the defendant

and Hoffman had been drinking blackberry brandy, probably five drinks, and earlier in the day Hoffman had smoked some marijuana. After leaving the bus the defendant and his companion unsuccessfully looked for lodging until approximately 11:30 p.m., at which time they entered a bar known as "Frizzie's" where they drank until approximately 2 a.m. It was Hoffman's testimony that she couldn't remember what she was drinking, or how much, but generally she would drink either beer or whiskey. Upon leaving "Frizzie's" the duo visited a bar called "Luke's" where they had but one drink because it was closing. After Hoffman purchased two bottles of brandy departure was made from Luke's, and both she and the defendant went to the bus station, sat on the curb and continued to drink. Evidence as to the sequence of events in the early morning hours of May 13, 1979, as to the activities of the defendant and his companion Hoffman are conflicting and at the best hazy. It is, however, apparent that sometime after 2:30 a.m. Hoffman was approached by a Mexican who wanted her to go with him, and that he was chased away by the defendant. Mexicans later returned in a vehicle and shot at the defendant and Hoffman. It was later determined that this bizarre incident did indeed occur, since as the result of it two Mexicans were later arrested and one of them was convicted. Also during the early morning hours a burglary and theft occurred in a building containing the bus depot and an insurance office.

As the result of the defendant's actions concerning the incident with the Mexicans the police were contacted and arrived at the bus station at approximately 5 a.m.

Upon arrival at the bus station the police discovered that the front door of the station had been forced open and entry had been made into an insurance office located in the building. Two candy bars were missing from the depot; however, $300 was missing from the insurance office. A bathroom between the office and depot area was in complete disarray. Pink toilet tissue was strewn on the floor. Outside the depot a number of items were found on the ground, *i.e.*, two blackberry brandy bottles, an insurance policy, a letter, pink tissue, a red ribbon, cigarette lighter and casino token from Reno, Nevada. It was established that the insurance policy and letter came from the insurance company office.

An extensive dusting for fingerprints failed to yield any prints of the defendant, and Hoffman's prints were never used for comparison.

The defendant and his companion became prime suspects in regard to the crimes committed at the bus depot and insurance office. Hoffman was searched at the police station. Initially the search failed to produce any incriminating evidence; however, subsequently in the presence of a female employee of the police department Hoffman voluntarily removed

$300 in United States currency which had been secreted in her vaginal cavity. Also pink tissue was found between her panty hose and buttocks.

Ultimately Karen Hoffman was convicted of the offense of burglary and pursuant to a plea agreement was sentenced to a term of two years probation. The plea agreement did not have as a condition or promise on the part of Hoffman that she would testify against the defendant.

During the trial of the defendant it became clearly apparent that Hoffman was the chief witness for the State. She was the only witness whose testimony could possibly provide any direct link between the defendant and the crimes committed in the burglarized premises. The fate of the defendant as to the crimes with which he was charged depended upon what his traveling companion Hoffman did or did not say. Such testimony being so vital, we will set forth a resume of the pertinent portions of it.

The witness Hoffman testified that she remembered being inside the depot with the defendant and going through some drawers, but that she did not recall if he had entered any other room. She could not recall if the defendant had entered any other room. She could not remember who had broken into the bus depot, but it could have been either the defendant or herself. She could not remember being in any restroom, but it was possible that she was in it as well as the insurance office. She testified that after the incident with the Mexicans the defendant did give her some money which she placed in her suitcase; however, she qualified this statement by saying that it was possible that someone else gave her the money. Hoffman further testified that it was possible that she was the person who took the money. Throughout the witness' testimony she reiterated the statement that she had been drinking heavily and couldn't remember with any clarity the events which transpired after she left the bus.

Hoffman admitted that she did not want to testify and that she returned to Illinois from Nevada for the trial because she was subpoenaed. The State paid for her air fare for the trip from Nevada, paid for her room and provided her with $35 spending money.

Hoffman had made a prior statement in which she stated, "At around five a.m., John [the defendant] got the door open to the bus station and started going through the drawers, and then he disappeared someplace, I don't know where, and he came back and handed me some money." The trial judge ruled that he would permit the State to cross-examine the witness on one issue, to-wit, the defendant's entry into the building, since her direct testimony on this question was in conflict with the written statement she had previously made for the police. In this cross-examination by the State the witness reaffirmed her earlier testimony that

she did not really know if the defendant had opened the door and that she made the statement because the police told her that she saw the defendant open the door, and not because she remembered seeing him do so.

Testimony from other witnesses than Hoffman corroborated her testimony as to the defendant's expulsion from the bus, his drinking, his presence in the bus depot area and his troubles with the Mexicans. There was also testimony as to statements made by defendant regarding the burglary. Mike Lewis, to whom the defendant spoke, testified that he (the defendant) claimed that Mexicans had robbed the depot. Officer Haun testified that the defendant told him the door to the depot was broken, but he did not know who did it. Officer Parks testified that while at the police station the defendant told him he had no idea as to who broke into the depot.

After deliberating for approximately 10 hours the jury returned verdicts of guilty against the defendant for the offenses of burglary and theft.

In support of its argument that the defendant was proved guilty beyond reasonable doubt, the State cites the case of *People v. Klausing* (1976), 41 Ill. App. 3d 588, 353 N.E.2d 441, in which this court recognized the rule that a determination by a trier of fact will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of guilt. We quarrel not with this rule of law; however, it was cited by this court in a case where the issue involved what if any inference was to be given to evidence of recent exclusive and unexplained possession of stolen property by an accused. This rule was previously followed in cases pertaining to the possession of drugs by an accused. (See *People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 370, 372, *cert. denied* (1964), 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665, and *People v. Mack* (1957), 12 Ill. 2d 151, 145 N.E.2d 609. We do not hold or in any way intend to infer that the rule is only applicable to cases where the possession of the fruits of a crime is a determinative factor; however, without setting forth the evidence in the cases of *Klausing, Galloway* and *Mack*, we make the observation that a reading of the same will disclose that there was substantial evidence in each case linking the accused with the crime charged. To uphold a criminal conviction, the evidence must be credible and substantial. See *People v. Coulson* (1958), 13 Ill. 2d 290, 149 N.E.2d 96, and *People v. Gregor* (1935), 359 Ill. 402, 194 N.E.2d 550.

■■ In the instant case the crucial testimony was that of the defendant's companion, Hoffman, who was on probation for the offense of burglarizing the insurance office in the bus depot. It is recognized that the uncorroborated testimony of an accomplice is fraught with weakness and

of the most unsatisfactory character in that it is often attended with serious infirmities, *i.e.*, malice towards the accused or hopes of leniency from the prosecution. (See *People v. Hansen* (1963), 28 Ill. 2d 322, 192 N.E.2d 359.) In the instant case the testimony of Hoffman was not attended with such infirmities. She was a reluctant witness, and her testimony tended to exculpate rather than inculpate the defendant. She harbored no desire for leniency since she had previously pleaded guilty to the same offense with which the defendant was charged. Though called by the State, her testimony was such that the trial court was requested to declare her a hostile witness. This request was granted but limited to her testimony to the narrow issue as to whether or not the defendant opened the door to the bus station. In a post-arrest statement Hoffman had stated that the defendant had opened the door and had gone through some drawers. If any infirmities existed it could be argued that they existed at the time Hoffman gave a statement to the police. It is reasonable to surmise that at this time she had hopes of leniency which she in fact received. Upon being cross-examined by the State, Hoffman's testimony repudiated her statement as to the defendant's entry into the depot.

In examining the evidence, we deem it significant that it was the defendant who called the police to the scene of the crime, which is an unlikely act from a perpetrator of a crime. Three hundred dollars was secreted in the body of Hoffman, yet she stated that she received money from the defendant and placed it in a suitcase. Pink toilet paper was found on her person, and there was pink toilet paper in the bathroom connecting the depot area with the insurance office. Among the articles described outside the bus depot were some pink toilet paper such as was described in the undergarments of Hoffman, and a casino token from Reno, Nevada, and she acknowledged that she worked as a prostitute in that State. Additionally the testimony of Hoffman was that because of intoxication she could not remember the events concerning the bus depot and insurance office burglary and acknowledged in her testimony that it was possible that she was the one who committed the crime.

We are well aware of the repeated rule that the trier of fact rather than a court of review is better able to observe the demeanor and credibility of witnesses, and a verdict rendered after such observation should not lightly be put aside. We are also cognizant of the rule of law that the presumption of innocence accorded a defendant is not to be overcome by conjecture, speculation, innuendo or probabilities. *People v. Johnson* (1964), 31 Ill. 2d 321, 201 N.E.2d 367; *People v. Howard* (1979), 73 Ill. App. 3d 870, 393 N.E.2d 1084.

The evidence in this case is flimsy. It is fraught with weaknesses. It fails to supply either by direct evidence or reasonable circumstantial evidence that it was the defendant who broke into and entered into the

premises in question. To sustain the conviction this court would have to engage in speculation and conjecture. Should we do so we could just as easily conjure that Hoffman was the sole perpetrator of the crime or speculate that the Mexicans were in fact the guilty culprits. The evidence in this case totally fails to prove the defendant guilty beyond reasonable doubt.

Other issues were presented in this appeal; however, having determined that the conviction of the defendant by the circuit court of La Salle County must be reversed, it is not necessary to consider them.

Reversed.

ALLOY, P. J., and STENGEL, J., concur.