The People of the State of Illinois, Plaintiff-Appellee, v. Queen Esther Gaylord, Defendant-Appellant.

(No. 71-218;

Second District—August 23, 1972.

Ralph Ruebner, of Defender Project, of Elgin, (Paul Bradley, of counsel,) for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant was convicted of armed robbery and burglary after a jury trial. She was sentenced to 4-12 years in the penitentiary. She appeals, contending that guilt was not proved beyond a reasonable doubt; that there was no evidence to justify an accountability instruction which was given pursuant to Ill. Rev. Stat. 1969, ch. 38, sec. 5-2(c); and that prejudicial remarks of the prosecutor deprived her of a fair trial.

Although the evidence is largely circumstantial, the record is sufficient to prove the guilt of the defendant beyond a reasonable doubt. There was testimony that she had previously stayed at the house of Mrs. Ruth McKee when visiting in Rockford from Chicago; but was told to leave when Mrs. McKee saw her "rambling" through some of her drawers. On August 1st, Mrs. McKee and a tenant, Mr. Simon, returned to Rockford at about 11:30 P.M. from Racine, Wisconsin, where Mrs. McKee had withdrawn $1,000 in cash in preparation for a trip to New York. Shortly after midnight Mrs. McKee left the house to walk to a neighboring store to get some "pop".

Mr. Simon was left alone in the house. He testified that some time after midnight he heard a knock on the door. He asked who was there and was told it was "Ruth". He opened the door and recognized defendant from her previous stay. Defendant told him that Mrs. McKee owed her some money and she was going to stay until she got it. Simon said he told her Ruth wasn't home and that he didn't know where she was. Defendant then tried to push her way in, but Simon blocked her

entry. Two men then appeared. Defendant told the men not to hurt Mr. Simon because he didn't know anything about the money, and she proceeded upstairs. One of the men had a gun, although it is not clear when the gun was produced. Simon was pushed to the floor of the living room, then ordered upstairs where he saw defendant taking clothes from a closet and throwing them on the bed. The men tied his hands behind him with an ironing cord and threw a mattress over him, although it did not completely cover him and he was able to see that the defendant and the two men left together. He did not see them take anything, but all of the clothes were gone from the bed when they left. Simon then went downstairs, still bound, where he met Mrs. McKee returning home.

Mrs. McKee testified that when she returned home she found the mattress removed from her bed, the bed ripped apart, the drawers pulled out of the dresser, her purse ripped open, and all of the containers downstairs emptied. She discovered that $1,047 was missing from her purse which had been sitting by the side of her bed. Also missing were her clothes, radios, a tape recorder, some bank bags, purses, two small coin bags, and a portable television. Her Buick automobile parked in front, the keys to which had been lying on the table near the door to the living room, was also missing.

There was testimony that at 2:55 A.M. on August 2nd, 1970, defendant was stopped for traveling 84 miles per hour in a 65 mile per hour zone on the Northwest Tollway near the O'Hare interchange, driving east bound toward Chicago. She had a female passenger in the front seat. She posted her driver's license and was allowed to leave since the officer had not received a report of the robbery at that time.

At 3:10 A.M. the officer received the report and at 3:21 he stopped two men in the car which had been stolen from Mrs. McKee. The car was traveling toward Chicago between 100 and 103 miles per hour. Many of the items Mrs. McKee later reported missing were found in the car, including $575.02 in cash and a payroll check made out to Mrs. McKee. In addition, a .32 caliber revolver containing 5 live rounds was found under the right front seat. The other items taken were not recovered.

■■ On this evidence, the jury was justified in finding defendant guilty of armed robbery and burglary on the theory of accountability, and it was not error to give an instruction based on Sec. 5—2 of the Criminal Code, *supra.*

Defendant argues that even if the evidence shows that she knew the two men, there is no proof that she took part in their offenses, and that

her acts were consistent with her statement that she sought only to recover money owed her by Ruth McKee. We are not persuaded. She was admitted into the house on an apparent ruse; two men appeared within moments; she showed no surprise or fear, but in her only conversation with the men she told them not to hurt Mr. Simon; she was seen ransacking the bedroom closet, with most of the missing articles being taken from the same room; she made no attempt to free Simon; and left at the same time as the two men, returning to Chicago as they did.

There was evidence from which the jury could conclude that the defendant actively participated in the proceedings intending to facilitate the commission of the offenses, rather than being merely present or negatively acquiescing in the mens' act. (See *People v. Richardson* (1965), 32 Ill.2d 472, 476—477; *People v. Ewell* (1972), 5 Ill.App.3d 443, 283 N.E.2d 497, 499.) The nature of the defendant's participation in the crimes distinguishes the case from *People v. Ramirez* (1968), 93 Ill.App.2d 404, and *People v. Tillman* (1971), 130 Ill.App.2d 743. In both cases, defendants had knowledge that a crime might be or had been committed. But it was not established that they were present at the time and place of the offenses; they had previously indicated their intentions not to become involved in the criminal acts of their companions; and they took no active part in the commission of the offenses.

■■ Defendant's reliance upon *People v. Johnson* (1964), 31 Ill.2d 321, 323—324, is misplaced. It is, of course, true that, while a case may be established by circumstantial evidence, the proof must be beyond a reasonable doubt. The presumption of innocence is not overcome by speculation or probabilities, and where the evidence fairly permits an inference consistent with innocence it will not support a conviction. But the evidence here does not fairly permit an inference consistent with innocence. Substantial evidence, although largely circumstantial, supports the verdict beyond a reasonable doubt.

Defendant's further argument that there is no proof of defendant's specific felonious intent at the time she entered the building, to support the burglary charge, citing *People v. McCombs* (1968), 94 Ill.App.2d 308, 312, is without merit under the circumstances here.

■■ The remarks of the prosecutor during closing argument which were neither objected to at the time or raised by post-trial motion did not deprive the defendant of a fair trial. In context, the prosecutor's statement that "there isn't any defense" to the armed robbery charge was a comment on the uncontradicted nature of the State's case and did not appear calculated or intended to direct the attention of the jury to

the defendant's neglect to avail himself of his legal right to testify. And the jury was properly instructed that the fact that the defendant did not testify should not be considered by it in any way in arriving at the verdict. See *People v. Mentola* (1971), 47 Ill.2d 579, 582; *People v. Kostos* (1961), 21 Ill.2d 496, 497—498.

The cases cited by the defendant are distinguishable on their facts. In *People v. Wollenberg* (1967), 37 Ill.2d 480, 487—488, the prosecutor referred to each of the witnesses who had testified, including two witnesses for the defense but not defendant, and then said "* * * No one else testified. Let's get that straight." Here, there were no witnesses who testified for the defense, and the references were not directly pointed at the defendant's failure to testify. In *People v. Burton* (1969), 44 Ill.2d 53, 57, the remarks, *"he's* got to explain the blood on the pants", and that there was no explanation "from *him*", could have been intended for no other purpose than to call the jury's attention specifically to the defendant's failure to testify, and were plain error. In *People v. Chellew* (1968), 104 Ill.App.2d 100, 105—106, the prosecutor stated several times that there was no evidence "from that witness stand", followed by a direct reference to the defendants ("I didn't hear them say that"). This was an unambiguous statement directed to defendant's failure to testify and therefore was plain error.

The other remarks complained of appear to us to be reasonable comments on the evidence.

The judgment of the trial court is affirmed.

Judgment affirmed.

GUILD and T. MORAN, JJ., concur.