THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD SANFORD, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DARRELL SMITH *et al.*, Defendants-Appellants.

(Nos. 74-185, 74-217 cons.;

Second District (1st Division)—January 22, 1976.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellants.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

Defendants Sanford, Smith and Dover were indicted for the offense of armed robbery. The trial of the case against the defendant Sanford was severed from that of the other two defendants. Following two separate bench trials, the three defendants were found guilty and were each sentenced to the penitentiary for terms of from 4-8 years. All three defendants appeal and, due to the similarity of issues presented, we have consolidated the two appeals for decision. Defendants contend that the trial court erred in denying their motion to suppress certain evidence which they contend was seized pursuant to an illegal arrest. Defendant Sanford also contends that the trial court should have suppressed a certain statement which he gave to the police because it was tainted by the illegal arrest.

Shortly before midnight on January 16, 1973, the Owens gas station in Rockford was robbed by two men. James W. Kearbey testified that at approximately 11 o'clock he sold a pack of cigarettes to a man whom he subsequently identified as Ronald Sanford. About 45 minutes later two men entered the gas station and, at gunpoint, committed the robbery in which $160 was taken from the desk and a coin changer was taken from Kearbey's person. The lights were turned off at the gas station, Kearbey was forced to lie flat in the back room and the door thereto was locked. When the men left Kearbey kicked open the door and found that the cigarette rack had been ransacked and the telephone had been pulled from the wall. Kearbey drove his car to a nearby public phone and called the police. He identified one of the two men as Mark Dover, whom he had known in high school, and the other man was subsequently identified by him as Darrell Smith. Kearbey had an opportunity to observe both men prior to the lights being turned out in the gas station.

Officers Gary Thurston and Daniel Scott of the Rockford police department were on patrol duty in an unmarked squad car when they received a radio message advising them of the robbery of the Owens gas station. As they were driving toward the gas station, at a point approximately 17-18 blocks from the station, they observed a motor vehicle occupied by one white and two black males, traveling at a higher than normal rate of speed in a direction away from the Owens gas station.

Officer Thurston testified that "the vehicle kind of fishtailed and we made a U-turn and proceeded after the vehicle." After following the vehicle for several blocks, defendant Smith's vehicle stopped without police interference and Mark Dover exited toward his place of residence. At this time the officers turned on their Mars light and shone their spotlight on the car and its occupants. The officers then, with shotguns, approached the occupants of the car and advised them that they were investigating an armed robbery. The occupants were required to put their hands over their heads and the police officers called the Rockford police department and asked for further information regarding the robbery. Within one minute they were advised that one of the robbers was one Mark Dover. One officer then inquired of the three men if one of them were Mark Dover and one of the men stated that he was Mark Dover. The officers then arrested the three men, radioed for assistance and a search was made of the defendants and the vehicle in which they were riding. The search revealed the coin changer, the gun, cigarettes and the money. At the police station all three defendants were separately given the *Miranda* warnings and defendant Sanford, a former Rockford police officer, made a written statement in which he admitted his participation in the robbery. Defendants Smith and Dover, likewise, after being given the *Miranda* warnings, made statements in which they admitted their participation in the robbery. Motions to suppress the statements in the case of each defendant were made, a hearing was had thereon and the trial court denied the motions to suppress. The statement of the defendant Sanford was introduced into evidence in his trial.

On appeal, defendant Sanford contends that his arrest was illegal and that the evidence seized incident thereto, as well as his subsequent statement admitting his participation in the crime, should have been suppressed. It is to be noted that Sanford was not identified at the time of the robbery although Kearbey, the gas station operator, testified that Sanford was in the station earlier on the night of the robbery to purchase a pack of cigarettes and that he was in a late model Chevrolet in which there were two other occupants.

In the case of defendants Smith and Dover a similar contention is raised by defense counsel, to-wit: that the trial court committed reversible error when it denied their motion to suppress the evidence seized pursuant to an allegedly illegal arrest. It is to be noted that defendants Smith and Dover also moved to suppress the statements made them. Although these motions were denied, these statements were not used at trial and are not in issue before us.

The simple and somewhat basic question therefore presented to this court is whether the investigatory detention of the three men here in question was illegal. The defendants were not actually stopped by the police but had stopped the car of their own accord and defendant Mark Dover had exited the car prior to the turning on of the Mars light and use of the spotlight by the police car. The State argues that the motion to suppress was properly denied because the officers lawfully detained the defendants pursuant to section 107—14 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 107—14) and obtained sufficient information during that detention to form the probable cause necessary to arrest the defendants without a warrant and seized evidence pursuant to a valid search incident to that arrest.

■■ In *People v. Lee* (1971), 48 Ill.2d 272, 269 N.E.2d 488, the Illinois Supreme Court held that this section is a legislative codification of the holding of the Supreme Court of the United States in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868, and that the tests enunciated in *Terry* are the standards for determining whether a stop by a police officer falls within the ambit of section 107—14. Under *Terry* the "stop" itself must be justified by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (392 U.S. 1, 21, 20 L.Ed.2d 889, 906.) The objective determination to be made is whether "the facts available to the officer at the moment of the seizure * * * 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. 1, 22, 20 L.Ed.2d 889, 906.

Thus, the question presented is whether the facts available to the officers at the time they detained the defendants were sufficient to justify the detention. The detention of the men in question was based on the following factors: (1) a robbery of a gas station had occurred a few minutes before detention; (2) the police officers were on their way to the scene; (3) the police officers observed a car traveling at a "higher than normal rate of speed" and "the vehicle kind of fishtailed and we made a U-turn and proceeded after the vehicle"; (4) the vehicle was coming from the direction a car might take in leaving the scene of the robbery; and (5) the car was the only car or one of very few cars on the street at that late hour. Under these circumstances, we reach the question of whether this was a situation where, under the provisions of section 107—14 of the Code of Criminal Procedure, "[a] peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reason-

ably infers from the circumstances that the person \* \* \* has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. \* \* \*"

The case before us is somewhat similar to the facts in the case of *People v. Housby* (1975), 26 Ill.App.3d 92, 324 N.E.2d 465. In *Housby*, a policeman on patrol had been advised over the police radio that two suspects named Housby and Seibach were being sought in connection with a burglary. About 1 a.m. he saw two men crossing the street and asked their names. When they replied, "Housby and Seibach" the police officer arrested them. In response to defendant's contention that the trial court erred in denying his motion to suppress, the court stated:

"It is noted that the officer simply asked the names of the parties, and when he determined that they were the persons who were being sought he placed them under arrest. Temporary questioning, often called a 'stop,' is permitted according to the dictates of *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968). \* \* \* Defendant notes that when Potthoff stopped the two men, he knew only that a burglary had been reported a mile away that that two male suspects named Housby and Seibach were being sought. Defendant contends that this is not a basis to 'reasonably infer' that the men had committed an offense.

The State replies that merely questioning persons on the street as to their names is not a 'stop' and cites cases where a suspect is called over to a squad car and such action was ruled not sufficient restraint to be a 'stop.' [Citations.] We conclude that even if the incident was a 'stop' under section 107—14, the officer was justified in so acting." 26 Ill.App.3d 92, 96, 324 N.E.2d 465, 467.

It is to be expressly observed that the factual difference between the *Housby* case and the one before is that the police officer therein knew the names of the suspects at the time he stopped the two men while in the instant case the police officers did not ascertain the name of any of the defendants for a period of about 60 seconds, during which they radioed in for such information and were advised that one of the men was Mark Dover. It is also to be observed that in *Housby* the officer did not use a weapon in questioning the suspects. The question then arises as to whether detention of the defendants herein at gunpoint and for a period of approximately 60 seconds during which the name of one of them was ascertained by radio, so differentiates this case from *Housby* as to warrant the conclusion that the detention herein was illegal.

It is of interest at this point to observe the following statement of the

court in *People v. Howlett* (1971), 1 Ill.App.3d 906, 910, 274 N.E.2d. 885, 888:

> "Unlike an arrest which requires probable cause, in a threshold inquiry of a citizen, aimed at effective crime prevention and detection, there is '[t]he recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' *Terry v. Ohio* (1968), 393 U.S.1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889."

In *People v. Lee* (1971), 48 Ill.2d 272, 269 N.E.2d 488, two police officers were on duty in Chicago and had been informed that certain gangs in the area where they had been assigned were going to engage in a "gang war." Two officers heard what they thought were loud reports which sounded like revolver or shotgun discharges and within a few minutes, and about two blocks from where the officers heard the discharges, they observed defendants in a group of three other young men. There was no one else in the vicinity and four of the men in the group wore berets of the type which, it was believed, were worn by members of the gang which might be involved in the anticipated gang war. The officers approached them, believing that they might be involved in a gang war anticipated for that evening. They stopped the six men and talked with them briefly. They then gave them a pat search for the officers' protection. They found a shotgun shell in the pocket of one man and an empty holster on the shoulder of another. The issue presented in *Lee* was whether there were adequate grounds to stop the defendants for questioning and, as stated above, the court in *Lee*, in quoting *Terry*, said:

> "* * * the 'police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion [*i.e.*, the stop].' (*Terry v. Ohio*, 392 U.S. 1, 21, 20 L.Ed.2d 889, 906.)" 48 Ill.2d 272, 276, 269 N.E.2d 488, 491.

The court then assessed the officers' conduct on the basis of whether the officers' actions would "warrant a man of reasonable caution in the belief that the action taken was appropriate?" (*Terry v. Ohio.*) The court held that under the circumstances, the conclusion by the officers that criminal activity involving the defendants was "afoot" was not unreasonable, that the stopping of the defendants and the others in the group in question was proper police conduct permitted under *Terry*, and that, in view of the violent nature of the suspected criminal action, the officers were justified in believing the men might be armed.

In *People v. Keith* (1972), 7 Ill.App.3d 1071, 289 N.E.2d 103, the court held that probable cause was not required to make a stop in accordance with police officers' investigative functions. Ill. Rev. Stat. 1971, ch. 38, par. 107—14, as well as *Terry v. Ohio*.

In *Keith*, two Chicago police officers had been advised of a burglary in progress. As they drove by the premises, they observed a single automobile parked in front of the building with three men in the car and two others standing next to it. As the officers approached the car pulled away from the curb. The officers picked up a man walking away who was the only pedestrian on the street and who had been stopped before, and made a U-turn and stopped the car a short distance away. They observed a television set in the back seat, knowledge of which was disclaimed by all the men, and the men were placed under arrest. The court in *Keith* held that the officers were well within their authority to stop the vehicle pursuant to their investigation of the reported crime. While in *Keith*, unlike the instant case, the vehicle was seen at or near the scene of the burglary, we do not believe that this fact makes this case inapplicable to the case at bar.

■ In *People v. Hellemeyer* (1975), 28 Ill.App.3d 491, 329 N.E.2d 626, the question presented was whether or not the officer under the facts in that case was justified in stopping the defendant's vehicle. We again point out that in the case before us the officers did not actually stop the vehicle in question but confronted the occupants thereof after it had stopped and one of the men had exited the vehicle and had gotten about 15-20 feet away. In *Hellemeyer,* the court properly observed that a police officer's "inarticulate hunch" can never justify his stopping an individual. In *Hellemeyer* a police officer for the city of Breese, Illinois observed an automobile being driven south on Main Street at a very slow speed. He observed the car about 15 minutes later and he had received information that the car was registered to one Hellemeyer and that the car "had been involved in an incident of a suspicious nature" at a bar in Breese earlier that night. The police officer followed the car in question and stopped the vehicle in Trenton, Illinois. He observed open cans of beer in the vehicle and noticed the odor of alcohol on Hellemeyer's breath and then arrested him for illegal transportation of liquor. The trial court denied defendant's motion to quash the arrest. The appellate court affirmed, holding that:

> "Applying *Terry* to the facts of the instant case, we find that officer Wuest was justified in making the stop of the defendants' automobile for investigative purposes." (28 Ill.App.3d 491, 495, 328 N.E.2d 626, 630.)

The fact that the officer had ascertained that the car was owned by Hellemeyer, the fact that the car was driving slowly past business establishments at 3 a.m., that two men were in the car (subsequently three men were in the car), that a suspicious incident had occurred at a bar in the town involving his car earlier that night and that Hellemeyer was considered a "hot number" provided justification for the stop of the automobile for investigative purposes. We find that the factual situation presented to us in the instant case is not unlike that found in *Hellemeyer*. As pointed out above, the officers in the instant case had been alerted that an armed robbery had taken place, they observed a vehicle going at a fast rate of speed away from the scene, although 17-18 blocks away, that it was one of very few or the only car in the area, and that the incident had occurred minutes before. We find that these facts were sufficient to constitute reasonable justification for questioning the occupants of the vehicle after it had stopped. Due to the fact that the officers had been alerted that there had been an armed robbery, we find that the use of weapons for the purpose of investigating the incident and protecting the officers was also further justified. See also *People v. Naujokas* (1974), 18 Ill.App.3d 278, 309 N.E.2d 743 (abstract opinion).

Having thus found that the detention of the defendants was justified, we turn then to the question of whether the subsequent arrest was proper. In *People v. Jones* (1964), 31 Ill.2d 42, 198 N.E.2d 821, two Chicago police officers observed the defendant emerge from an elevated station carrying two open shopping bags in which a silverware chest or case protruded and with a camera over his shoulder. For the purpose of determining whether the defendant was on his way to "fence" the material, it appearing that the defendant may have been a narcotics addict, they followed him and, after a period of time, went into a drug store where they questioned him. The officers had not been advised of the burglary in which the items in the possession of the defendant had been taken, although they were investigating a burglary in which such items as a camera and silverware had been taken. It was subsequently determined that the items were stolen in a burglary of a residence in the city of Evanston. The defendant was tried and convicted of this burglary. On appeal, defendant argued that the trial court erred in refusing to suppress the evidence seized incident to an allegedly unlawful arrest. The Supreme Court held that while mere suspicion, common rumor or report do not provide probable cause for arrest, the officers therein had more. The arrest and subsequent seizure were held valid based upon the fact that a burglary had been committed in which

a camera and silverware had been taken in the area in which the police officers were working, the fact that a fence was believed to be operating in the area, the fact that a camera and a silverware case were in plain view on defendant's person, the fact that defendant was loitering for about ten minutes in a drug store, the fact that defendant gave an unsatisfactory answer to police questions as to the reason defendant was carrying the camera and silverware case and the defendant's demeanor. These facts justified his arrest and the subsequent seizure of the items in question, although the officers had no idea that the items had been stolen in the burglary in Evanston. Citing the case of *People v. La Bostrie* (1958), 14 Ill.2d 617, 153 N.E.2d 570, the court pointed out the difficulty in such a situation lies in applying the law to the facts of each case or in determining whether the facts and circumstances of the particular case gives rise to the reasonable grounds or probable cause for the arrest.

■■ Having held that the detention herein was proper, we further find that the almost immediate ascertainment that one of the men stopped was Mark Dover, who was wanted for the armed robbery, constituted probable cause for the arrest of the three men. Having so held that the detention and the arrest were proper, the seizure of the items incident thereto was, likewise, proper.

In view of our holding, we turn then to the question of whether the statement made by the defendant Sanford was properly admitted into evidence. Counsel for defendant Sanford has based his objection to the admission of the confession upon the argument that it was the product of an illegal arrest. Inasmuch as we have determined that the detention and subsequent arrest herein were legal under the circumstances and in the absence of any evidence of coercion, the defendant's argument must fail. We, therefore, further hold that the confession was properly admitted.

It is not to be overlooked in this case that both defendant Smith and defendant Dover were positively identified by the victim of the armed robbery and that the proceeds of the armed robbery were found in the vehicle occupied by the three defendants within a matter of a few minutes after the armed robbery had been committed.

Finding no error in the respects charged, the judgments of the court are affirmed both in the case of *People v. Sanford* and in case of *People v. Smith and Dover*.

Affirmed.

SEIDENFELD, P. J., and HALLETT, J., concur.