THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS WHITE, Defendant-Appellant.

Second District   No. 75-454

Opinion filed May 19, 1977.

Robert P. Will, Jr., of Waukegan, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

The defendant, Dennis White, was found guilty by a jury in the Circuit Court of Lake County of the offense of armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2) and sentenced to a term of imprisonment of 8 to 10 years.

Defendant appeals, contending the trial court erred in denying his motion to suppress his statement, identification and certain physical evidence; that the judge made a prejudicial statement to the prospective jurors at the commencement of *voir dire* suggesting defendant's guilt; that the prosecutor's argument was prejudicial and contained improper comment on defendant's failure to testify; that the court erred in refusing one of defendant's tendered instructions; that he was not proved guilty beyond a reasonable doubt; and that the sentence was excessive.

We find no merit to these contentions and affirm the judgment of the trial court.

On the night of January 15, 1975, the complaining witness, Bartley Nicholson, who was a sailor stationed at Great Lakes, had been drinking in North Chicago at LaVerne's bar. He testified he left the bar about midnight in a somewhat intoxicated condition with several persons he had met there. Nicholson, a man he identified as Dennis White and a woman named Carol Grant went to an apartment where they remained for about 20 minutes. It was well lighted. Nicholson inquired of the others about the possibility of getting some drugs; the three of them then returned to the car and drove to a house in Waukegan for that apparent purpose.

Nicholson testified he and defendant were walking towards the rear of the house when defendant grabbed him by the throat and held a knife to his neck. He was forced to the ground, his money, wallet and shoes were taken, and his assailant fled in the car with the woman.

Nicholson called the police and was sitting in their squad car describing the evening's events and the car to the officers when a car matching his description was driven nearby. He told the officers, "That's the car, and the man that robbed me." The police, with Nicholson in the back seat of their squad car, followed the indicated vehicle and stopped it a few blocks away. The man and woman in the car were asked to get out and Nicholson immediately identified defendant from his seat in the squad car about 20 feet away. He also identified the woman as the same person he and White had been with earlier in the evening.

The defendant was searched outside the car and had $43 in his possession. Nicholson was unclear about how much had been stolen from him; he had been paid $159 that day and had spent quite a bit during the evening. No knife was found nor was the wallet located. While driving to the Waukegan police station with defendant, the officers found Nicholson's shoes in the street.

At the police station, defendant asked to talk to Lieutenant Tufo, an officer with whom he was acquainted and who he stated had once given him a break. After a brief conversation with Tufo, defendant was advised of his *Miranda* rights and questioned by other officers who testified defendant admitted taking Nicholson's property by threatening him with a knife as he had described. Defendant refused to sign a written statement.

Defendant first contends the trial court erred in denying his motion to suppress his statement, the identification and the physical evidence recovered at the scene of his arrest (apparently the money and photographs of the car) as the products of an illegal arrest. He asserts that because of the intoxicated condition and unkempt appearance of Nicholson his complaints and descriptions to the officers were unreliable and could not be a basis for establishing probable cause for defendant's arrest.

■■ It is well settled that a warrantless arrest requires probable cause. The test to determine if probable cause exists is whether a reasonable and prudent person in possession of the knowledge which has come to the arresting officer would believe the person to be arrested is guilty of a crime. *People v. Bambulas* (1969), 42 Ill. 2d 419, 247 N.E.2d 873; *People v. Macias* (1968), 39 Ill. 2d 208, 234 N.E.2d 783, *cert. denied*, 393 U.S. 1066, 21 L. Ed. 2d 709, 89 S. Ct. 721.

■■ Nicholson had described the car to the officers as a black-over-

white Buick or Oldsmobile. A car of that description came by at that moment, he pointed to it and told the officers that was the car and the man who had robbed him. The officers stopped the car, the victim then identified defendant again as the robber, and the officers arrested him. The fact that Nicholson was unkempt, perhaps, in part, as a result of the robbery he had reported, and to some degree under the influence of alcohol did not bar the officers from considering his complaint and acting upon it. Nicholson had no apparent difficulty in coherently describing the crime which had been committed and its perpetrators to the officers. The car pointed out by Nicholson was a black-over-white Buick and when stopped it did contain a man whom the victim said was the robber. The officers clearly were justified by their prior knowledge in stopping the described vehicle in which defendant was riding and, upon the verification of his identification by Nicholson, in arresting him for the offense charged. (Ill. Rev. Stat. 1975, ch. 38, par. 107—14; *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488; *People v. Sanford* (1976), 34 Ill. App. 3d 990, 341 N.E.2d 453.) The trial court did not err in denying suppression of the evidence stemming from defendant's arrest under these circumstances.

Defendant contends that permitting Nicholson to see him at the scene of his arrest for purposes of identification was impermissibly suggestive and tainted Nicholson's subsequent in-court identification of defendant.

■■ We do not view the circumstances here as coming within the purview of the cases relied upon by defendant. (*United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.) In those cases the identification procedures were planned in advance and carried out in a manner considered to be inherently unfair to the defendants. Under the circumstances of the present case there was little else the officers could do but to pursue the car in which defendant was riding, stop it and arrest him. It so happened the victim of the crime for which defendant was arrested was in the officers' vehicle describing to them the robbery to which he had been subjected when defendant rode by and was arrested. We do not believe the officers should have put Nicholson out of their car nor were they required to give up the pursuit for fear of such a confrontation as occurred here. It appears reasonable to us that the officers proceeded as they did in taking defendant into custody; the unavoidable and coincidental confrontation occurring between the witness and defendant cannot be held to taint the subsequent in-court identification in this case. *People v. Witherspoon* (1975), 33 Ill. App. 3d 12,

337 N.E.2d 454; *People v. Brown* (1975), 32 Ill. App. 3d 182, 336 N.E.2d 523.

■■ It is also clear from the facts in the instant case that Nicholson's trial identification of defendant was based upon his observation of the robber prior to the arrest. They had spent about an hour and a half together during the evening in the bar, in a well-lighted apartment and in the car; there was ample opportunity during that time for Nicholson to have become acquainted with defendant's appearance.

Defendant next contends the trial court erred in denying the motion to suppress his statement asserting he was tricked into making a confession and that his refusal to sign the statement evidences that it was involuntary on his part.

Dennis White testified at the hearing on this motion that, at his request, he spoke to Lieutenant Tufo before being questioned by the investigating officers. He stated that Tufo told him that he could help him get into a drug program and that he should go ahead and talk to the officers and his statements to them would not be used against him. Tufo also testified stating that he told White he could not help him out and advised him only to cooperate with the officers. He denied making any promises to defendant.

■■ Defendant does not dispute that he was fully advised of his *Miranda* rights and then described to the officers how he robbed Nicholson. The question of the voluntariness of a statement is for the trial court to determine on a consideration of the totality of all the relevant circumstances (*People v. Koesterer* (1976), 44 Ill. App. 3d 468, 358 N.E.2d 295), and by a preponderance of the evidence. (*People v. Golson* (1965), 32 Ill. 2d 398, 207 N.E.2d 68, *cert. denied* (1966), 384 U.S. 1023, 16 L. Ed. 2d 1026, 86 S. Ct. 1951; *People v. Harper* (1973), 16 Ill. App. 3d 252, 305 N.E.2d 680.) The trial court resolved the contradictions between defendant's testimony and that of Lieutenant Tufo against the defendant. We cannot say that the finding was against the manifest weight of the evidence and it will not be disturbed. The fact that defendant did not sign the written form of his statement does not, in itself, determine it was not voluntarily given but is only a circumstance to be considered by the court in deciding that issue as it may relate to the credibility of the officer's testimony. *People v. Delgado* (1975), 30 Ill. App. 3d 890, 333 N.E.2d 633.

Defendant next argues that the trial court suggested he was guilty of this offense when the judge paraphrased the indictment in introducing the case to the prospective jurors at the commencement of *voir dire,* as follows:

> "The defendant, Dennis White, is charged in an indictment with the crime of armed robbery. The offense is alleged to have taken

place in the early morning hours of January 16, 1975, behind a residence in Waukegan when Dennis White did take money and one pair of shoes from Bartley Nicholson by use of force and while armed with a knife."

The foregoing cannot be considered as an expression or opinion of guilt by the court. It simply informed the jurors, in the language of the indictment, of the nature of the charges alleged to have been committed by defendant and was entirely justified. (*People v. Calcaterra* (1965), 33 Ill. 2d 541, 213 N.E.2d 270.) The jury was also instructed by the court that the indictment is merely the formal method of accusing a defendant of a crime and placing him on trial and that it is not evidence against the defendant and creates no inference of guilt. (Illinois Pattern Jury Instructions, Criminal, No. 2.01 (1968).) We fail to see any possibility of prejudice to defendant as a result of the manner in which the court carried out its duty to initiate *voir dire* and informed the jurors of the nature of the alleged offense. *People v. Carruthers* (1974), 18 Ill. App. 3d 255, 309 N.E.2d 659.

■■ Defendant next contends that comments by the prosecutor during argument deprived him of a fair trial. He refers to a statement that to acquit the defendant would be to invite an "open season" on other sailors from Great Lakes and to the characterization of defendant as one of the "thugs, the thieves and the vultures" who would be further encouraged to rob sailors. The trial court determined these comments were appropriately based upon the evidence and we do not disagree, particularly given defendant's statement to police, introduced in evidence, that he went to LaVerne's to "rip off" some sailors.

A prosecutor is allowed to reflect unfavorably upon the accused, to denounce his wickedness and even to indulge in some degree of invective. He may not make statements intended only to inflame the passions or prejudices of the jury without throwing light upon the issues, but he may draw inferences which are unfavorable to the defendant if they are based upon the evidence. *People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286; *People v. Delgado* (1975), 30 Ill. App. 3d 890, 333 N.E.2d 633.

Defendant also questions the failure of the trial court to sustain objections made to four references in the prosecutor's argument that the evidence presented was "uncontradicted."

■■ A test to determine whether defendant's right not to testify has been violated by the prosecutor's comments is whether the remarks were intended or calculated to direct attention to the defendant's neglect to avail himself of his legal right to testify. (*People v. Burton* (1969), 44 Ill. 2d 53, 254 N.E.2d 527.) While a prosecutor cannot, directly or indirectly,

comment on the failure of a defendant to testify, he can comment on the uncontradicted nature of the evidence; he may do so even where the only person who could have contradicted that evidence was the defendant himself. (*People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283; *People v. Mentola* (1971), 47 Ill. 2d 579, 268 N.E.2d 8; *People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697.) The remarks objected to here called the jury's attention to evidence which could have been contradicted by defendant's companion, Carol Grant, or by other means. No direct reference was made to the fact that defendant did not testify. (*People v. Gaylord* (1972), 7 Ill. App. 3d 84, 287 N.E.2d 18.) We conclude these references were proper as not being intended to focus the jurors' attention on defendant's failure to testify.

■■ Defendant next argues it was reversible error for the court to refuse his tendered instruction, as follows:

> "It is the duty of the jury to consider the prisoner's case as if he were a white man, for the law is the same as to both white and black men, there being no distinction in principles in respect to color."

He relies on the early case of *People v. Kirkendoll* (1953), 415 Ill. 404, 114 N.E.2d 459, approving the instruction. This was the only instruction on the subject given in that case which was decided prior to the adoption of the IPI Criminal Instructions by the Supreme Court. Here the court instructed the jury by IPI Criminal Instruction No. 1.01 that a juror "should not be influenced by race, color, religion or national ancestry." This statement of the law is preferable to that offered by defendant and the court correctly refused the tendered instruction. *People v. Bazzelle* (1970), 130 Ill. App. 2d 131, 264 N.E.2d 457.

■■ Defendant contends next that his guilt was not established beyond a reasonable doubt. The credibility of the witnesses is for the trier of fact to determine and will not be disturbed on appeal unless it is clearly against the manifest weight of the evidence. The defendant argues that the complainant's testimony is unreliable because of his intoxicated condition and that defendant's confession to the police is untrustworthy because it was a product of police coercion. We find no evidence of coercion and have determined his statement was voluntary. The jury passed upon the reliability or credibility of the witnesses and its determination is not against the manifest weight of the evidence. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) We find the evidence sufficient to support the conviction.

■■ Defendant's last contention is that the sentence imposed was excessive. A reviewing court will not disturb a sentence unless it is shown that the trial court abused its discretion in its imposition. We should not substitute our judgment for that of the trial court unless it clearly appears

that the penalty imposed constitutes a serious departure from the fundamental spirit and purpose of the law. (*People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673.) We do not find such abuse in this case. Although this was the defendant's first conviction for a felony involving the use of a weapon, his past record included a burglary conviction in March 1969 for which he received three years probation, a second burglary conviction in November 1969 for which he received a four- to eight-year sentence, a misdemeanor conviction for theft by deception and an ordinance violation for verbal assault. At the time of his arrest on this charge the defendant was still on parole from his earlier felony conviction. We find the sentence of 8 to 10 years imprisonment not excessive given the nature of the offense and defendant's past record.

Affirmed.

RECHENMACHER, P. J., and BOYLE, J., concur.