(No. 32033.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT ULRICH, Plaintiff in Error.

*Opinion filed January 24, 1952—Rehearing denied March 17, 1952.*

THADDEUS C. TOUDOR, and ZOE KUTA, both of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, and WILLIAM J. McGAH, JR., all of Chicago, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

Plaintiff in error, Robert Ulrich, hereinafter called the defendant, was indicted by a grand jury in the criminal court of Cook County, tried by a jury, found guilty, and sentenced on the indictment consisting of two counts, charging him with the crime of taking indecent liberties with a minor child. He prosecutes a writ of error to reverse the judgment entered upon the verdict by the criminal court.

The assignments of error argued by counsel for defendant in this court all relate to the legal sufficiency of the evidence presented at the trial. The first contention is, assuming that the defendant did the acts as detailed by the complaining witness, still he has not been proved guilty of the crime defined in the statute in question. Defendant's second contention is that the evidence in corroboration of the prosecuting witness, a child of tender years, is not sufficient to sustain a conviction, particularly since no medical testimony was introduced. The third and final contention is that the evidence as a whole, particularly in view of the alibi evidence offered by the defendant, does not establish the guilt of the defendant beyond a reasonable doubt. A careful consideration of these assignments of error requires a rather full statement of the evidence.

Defendant was 28 years of age at the time of the trial on June 12, 1950. He is single and lives with his parents and an unmarried older brother in the city of Chicago. For twelve years prior to the trial he had been employed by the Howard laundry in that city as an assembly man and sorter. His work record was good. The complaining witness, Eva Julia McGuire, was nearly seven years of age at the time of the trial. She lives with her parents and an older brother and sister in Chicago. The testimony was that she attended the Stockton School and was in Grade 1-A and going into 2-B. Preliminary to her testifying as to the occurrences in question, she gave information concerning her family and school and stated that she knew what it meant to tell the truth.

The evidence further discloses that on Sunday afternoon, June 19, 1949, Eva had gone with her mother, Myrtle McGuire, her older sister, Janine, and a Mrs. Warnicke to the Clarendon Community Play Ground, a public park in the city of Chicago. This playground has several baseball diamonds and the usual swings and equipment for children. There is also a fieldhouse which has a gymnasium

and toilets on the upper level and showers and dressing rooms, among other facilities, on the lower level. The director of this playground at the time in question was George Morse.

Eva had been playing with her sister on the swings and Mrs. Warnicke and her mother were seated nearby on a bench which was only about thirty feet from one of the entrances to the clubhouse and commanded a view of that entrance. The park was crowded with people and several baseball games were in progress.

Sometime between 4:00 and 4:30 P.M. Eva came to her mother and asked if she could go to the washroom, and, having obtained permission, entered the building at the entrance near which her mother was seated. As she entered the building she met a man and asked him the way to the washroom. Instead of directing her to the washroom, the man carried her downstairs into the shower room. There, according to the child's own story, he pulled down her panties and "hurt" her. She stated that she was crying but that the man held her and would not let her go. At the trial she demonstrated to the court and jury where the man had "hurt" her. After the man released her, Eva ran out to her mother by the door through which she had entered. The man left by another exit.

The mother, Myrtle McGuire, had become alarmed at the child's absence when Eva ran from the building crying and sobbing. She told her mother that a man had hurt her. The mother went immediately into the clubhouse but caught only a fleeting glimpse of a man she could not identify leaving by another doorway. The mother then contacted George Morse, the playground director. Eva described the man as a tall thin man with brown wavy hair, wearing glasses and clothed in blue pants and a white shirt. Morse and Mrs. McGuire searched the premises but could find no sign of the person described by Eva. The matter was reported to the police and the child was taken to American

Hospital that afternoon where she was examined by a Doctor Garcia. Dr. Garcia did not testify at the trial. The record shows that he was in the Philippine Islands at the time.

On Saturday evening, June 25, 1949, Morse, who was on duty at the playground, saw the defendant come into the grounds at about 9:15 P.M. Defendant's appearance fit the description of the man given by Eva McGuire. In addition, Morse recognized defendant as the man he had encountered in the basement of the clubhouse at about 3:00 P.M. on June 19, 1949, the date of the alleged crime. At that time Morse had asked him what he was doing there and defendant replied that he was looking for the men's washroom. Morse states that he positively told the defendant at that time that he was not allowed in the basement and directed him to the upper level of the clubhouse where the washroom was located.

After defendant came into the playground on the evening of Saturday the 25th Morse observed him enter the clubhouse and followed him. Defendant stood in a corner of the gymnasium for about ten minutes. No one else was there. A little girl came into the gymnasium to get a drink and, as she was drinking at a fountain there, the defendant was observed as he approached her and talked to her. Defendant then walked away with the girl and proceeded into the basement. Morse followed them and found them together in a dark part of the basement which they had entered through a door marked "Keep out." Morse apprehended the defendant and took him to the former's office in the building. This testimony was developed by defense counsel on cross-examination of Morse.

Morse turned the defendant over to the police on that same evening, and defendant was questioned and held. On the following day, Sunday, June 26, 1949, Eva and her mother came to the district police station at the request of police officer Delford R. Brust, to see if Eva could identify

the defendant. The defendant was lined up in a line with three other men and an officer in plainclothes when Eva entered the room with her mother. Officer Brust testified that before anything else was said, Eva exclaimed (pointing to defendant,) "That is the man that hurted me, Mommy." Brust further states that upon questioning the defendant at the time of his arrest on Saturday, June 25, 1949, defendant denied ever having been at the Clarendon Play Ground, but that after Eva identified the defendant at the "show-up" on the 26th, defendant admitted to him (Brust) that he had been at the playground on Sunday, the 19th. At the trial the child, Eva, positively identified the defendant as the man who molested her, and Morse pointed out the defendant as the man he had encountered in the basement of the clubhouse at 3:00 P.M. on Sunday, June 19, 1949, and as the identical person later appearing at Clarendon and being found in the basement of the building Saturday evening.

The defendant flatly denied at the trial that he knew or had ever seen and molested Eva McGuire. He denied that he had ever been at the Clarendon Play Ground prior to his going there on Saturday evening, June 25. He stated that on Sunday, June 19, which was Father's Day, he had been at home with his family where a family dinner was served about 3:00 P.M. Those present at the dinner were defendant's mother, his father, his older brother and two guests, long-standing friends of the family. All testified that defendant was home continuously from about 2:30 P.M. until after 11:00 P.M. on the date in question.

Defendant produced two character witnesses, who testified that the reputation of defendant for chastity and morality was good.

Two police officers, Harry L. Larson and John Burke, called by the People in rebuttal, testified that they knew the general reputation of the defendant in his community for chastity and morality and that it was bad.

Considering the defendant's first contention that the acts complained of do not establish the *corpus delicti* of the crime under the statute, it should be remembered that the law in question does not specify any particular acts or conduct. (Ill. Rev. Stat. 1949, chap. 38, par. 109.) The act makes criminal and punishes the taking or attempting to take immoral, improper or indecent liberties with any child of either sex under the age of fifteen years with the intent of arousing, appealing to or gratifying the lust, passions or sexual desires either of the offender or of such child or of both the offender and of such child. It also makes criminal the commission or attempt to commit any lewd or lascivious act upon or with the body or any part or member thereof of such child with like intent.

In *People* v. *Johnson*, 298 Ill. 52, the evidence was to the effect that the defendant put his hands under the dress of the female child in question and passed his hands over her body. He did not get inside her underclothes and he did not in any way physically injure her. We held that the evidence sustained the charge under all the facts and circumstances there appearing. To the same effect is *People* v. *Gilmore*, 320 Ill. 233.

In the case now before the court we have the testimony that defendant carried this female child, then slightly under six years of age, down into a basement shower room where no one else was present and committed the acts above related. We believe that these acts are precisely the type of thing the statute in question makes criminal and seeks to punish. The intent with which an act is done is always a question of fact and is to be gathered from all the surrounding facts and circumstances. We believe that the jury was justified in believing that the acts, if done by the defendant, were done with the intent charged in the indictment. We also believe that his conduct with complaining witness constituted the taking of indecent liberties within the prohibition of the act in question.

Defendant next contends that his conviction cannot stand because the testimony of the complaining witness, a child of tender years, was not sufficiently corroborated. We have repeatedly stated that in this type of case, where the defendant denies the charge and a conviction is based on the testimony of a child of tender years, it ought not to stand unless that testimony is corroborated. Defendant takes the position that the rule requires corroboration by medical testimony wherever possible, which is not exactly correct. In fact, as pointed out in one of the cases cited, medical testimony in cases of this kind is often inconclusive and of little value. The evidence as set forth above, however, does indicate that the testimony of the child, Eva McGuire, is substantially corroborated. She is corroborated as to the occurrence by the fact that she came crying and sobbing to her mother immediately after being released, and complained of being hurt. She is strongly corroborated in her identification of the defendant by the testimony of George Morse, the playground director, who positively states that he saw the defendant in the basement of the building where the crime occurred just about an hour before its commission. The circumstances of Morse's meeting with the man in the basement were such that he was bound to observe him closely and his positive statements under these circumstances lend great strength to the testimony of the complaining witness. Consideration also was undoubtedly given by the jury to the further evidence that the description of the man given by the girl immediately after the occurrence fit the defendant, as well as the testimony of officer Brust that the defendant admitted to him that he was present at the Clarendon Play Ground on Sunday, June 19, 1949. From a careful reading of the record we believe that it can fairly be said that the testimony of the complaining witness was direct and positive and that she has been corroborated by evidence legally sufficient to support the conviction.

The last contention made by defendant is that the evidence as a whole, especially in view of the alibi evidence, does not establish his guilt beyond a reasonable doubt. As previously stated, three members of defendant's immediate family and two intimate friends of the family testified that he was in his home at the time the crime was committed. Police officer Brust testifies positively that after the child Eva identified defendant at the "show-up" on June 26, defendant admitted that he had been at the playground on Sunday, the 19th.

The situation here presented is somewhat similar to that in *People* v. *Filas,* 369 Ill. 78. There, the case for the prosecution also depended upon identification and the defense was an alibi. Only one witness testified for the prosecution identifying the defendant as the perpetrator of the crime but his testimony was direct and positive. For the defendant three members of his family and three other witnesses testified in support of his alibi. In affirming the conviction we then stated that in such a case we did not feel warranted in setting aside the verdict; that the jury had had an opportunity, not afforded this court, of seeing the witnesses on both sides, listening to their testimony and observing their conduct and demeanor while testifying. Where the evidence is conflicting the question of the credibility of the witnesses and the weight of the evidence is for the jury to decide and, even though the identification is by only one witness, if the testimony is positive and the witness credible the same rule prevails. *People* v. *LeMar,* 358 Ill. 58; *People* v. *Fortino,* 356 Ill. 415; *People* v. *Mosher,* 403 Ill. 112.

From a careful consideration of the entire testimony in this case we are unable to say that there is clearly a reasonable and well-founded doubt as to the guilt of the accused. This court is not justified in setting aside a verdict of guilty unless the testimony is so palpably conflicting as to indicate that the verdict was the result of passion

or prejudice or that the defendant has not been proved guilty beyond a reasonable doubt. *People* v. *Hinderhan,* 405 Ill. 435.

Finding no prejudicial error in the record, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*