(No. 33965.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WESLEY R. HALTEMAN, Plaintiff in Error.

*Opinion filed November 26, 1956—Rehearing denied Jan. 23, 1957.*

Julius L. Sherwin, and Theodore R. Sherwin, both Chicago, for plaintiff in error.

Latham Castle, Attorney General, of Springfield, and John Gutknecht, State's Attorney, of Chicago, (Fred G. Leach, Edwin A. Strugala, Irwin D. Bloch, John T. Gallagher, Rudolph L. Janega, and William L. Carlin, of counsel,) for the People.

Mr. Chief Justice Klingbiel delivered the opinion of the court:

Plaintiff in error, hereinafter referred to as the defendant, was indicted in the criminal court of Cook County, for the crime of taking indecent liberties with one Constance Petrie, a minor child. Upon trial by jury he was found guilty as charged and, after his motions for a new trial and in arrest of judgment were overruled, he was sentenced to serve a term in the penitentiary of not less than one year nor more than three years. The case is here for review upon a writ of error sued out by defendant.

From the evidence it appears that the defendant is 32 years of age. He attended Waukegan High School four years, after which he enlisted in the Coast Guard where he served over 2½ years and was honorably discharged in 1944. He married in July, 1945, and moved into his present home in November, 1951, the site of the alleged

occurrence. He is the father of three children, the oldest being Judy, age 10 years. He is now, and since his discharge from the service has been employed as a body and fender man by the Cadillac Motor Car Division in Evanston, Illinois. He had never before been arrested for any offense.

Upon the trial the defendant denied the charge and four witnesses testified to his good reputation for morality and chastity as well as for truth and veracity.

To reverse the judgment of conviction defendant contends (1) that his conviction depends solely upon the uncorroborated testimony of the nine-year old prosecutrix and therefore, as a matter of law, it cannot stand and must be reversed, (2) that the court erred in permitting the prosecuting attorney, in the closing argument, over objection by defendant, to read to the jury from the transcript of the evidence taken upon the trial, (3) that the court permitted the prosecuting attorney in the closing argument to make improper, inflammatory and prejudicial statements and remarks against the defendant thereby depriving him of a fair trial, (4) that the court erred in refusing to give to the jury certain instructions tendered by the defendant, and (5) that the court erred in restricting the cross-examination of the People's witnesses.

In order to determine whether there is any merit to the first contention it is, of course, necessary to examine the material portions of the testimony of the prosecutrix. Such examination reveals that at the time of the occurrences herein related she was nine years old, and lived with her parents, three brothers and two sisters in the neighborhood of defendant's home. In the rear of his home there was a play yard equipped with swings and toys where the children of the neighborhood, including Constance, frequently gathered to play. His daughter Judy was a playmate of Constance.

On Saturday, May 14, 1955, about two o'clock in the

afternoon, Constance attended a birthday party given for Judy at the defendant's home. Fifteen or sixteen other girls about the same age also attended. They delivered their presents, refreshments were served to them in the basement and movies were shown to them there. The defendant operated the movie projector. After the movies were shown the children went upstairs and played games in the house and out in the yard. Afterwards Jeannie Wohlers, also about nine years old, who is a cousin of defendant, went down to the basement of the house to tell fortunes with cards. Constance followed her down to have her fortune told. At that time they were alone. Then the defendant came down. Constance was sitting in a chair across from Jeannie. There was a little card table between them. The defendant asked Constance to sit on his lap and she did. Jeannie was fortune telling and had to look at the cards while doing so. While Constance was sitting in defendant's lap, he whispered in her ear to put her hands behind her back and when she did, the defendant unzipped his pants, put her hands on his privates, took her two hands in his and made her squeeze it.

On Thursday following the party Constance told her mother what had taken place at defendant's house during the party. Shortly thereafter Mr. and Mrs. Petrie and Mr. and Mrs. Sepper, also neighbors, called at the home of defendant, and when Mrs. Petrie complained to him of his actions toward her daughter, who up to that time had told the mother only of the incident occurring at the birthday party, defendant volunteered the statement, "Don't be silly, what could happen in the time it takes to buy a bag of onions." No one had mentioned onions to the defendant at any time. Mrs. Petrie did not then know what he was talking about. Her daughter Constance had not yet told her about this incident. Later it was developed that two weeks before the party, on a Saturday, while Constance was in defendant's car a similar offense occured under the

following circumstances: Constance testified that upon return of defendant's wife from a shopping trip she had forgotten to get onions and asked the defendant to go get some. The defendant and his daughter Judy, accompanied by Constance Petrie, went to the store where he persuaded Constance to stay in the car with him while Judy went in to buy the onions and that while so waiting, he committed a similar act. This statement made by defendant to Mrs. Petrie, in the presence of Mrs. Sepper, after Mrs. Petrie had accused him of mistreating her daughter, tends to indicate that defendant was guilty of some wrongdoing (*People* v. *Mueller*, 2 Ill.2d 311,) and is corroboration of the highest quality and from a most reliable source.

Constance further testified that altogether defendant in a period of about four months committed from four to six such offenses. Aside from the incident in the defendant's car and in the basement, the other incidents occurred in the bedroom of defendant's home, while no one else was present. These incidents were all of the same pattern—the holding by Constance of defendant's "privates."

From a consideration of the evidence above set forth we cannot agree with the contention of defendant that the testimony of the prosecutrix is uncorroborated. On the contrary we find that her testimony is substantially corroborated, and in the aforesaid instance, by the defendant himself. Apparently defendant had assumed that Constance had told her mother of that incident, and was ready with the foregoing answer. Mrs. Petrie and Mrs. Sepper both testified that defendant made that statement in the conversation between him and Mrs. Petrie. From this testimony the jury could well have found that the testimony of Constance was corroborated.

Moreover, evidence of more than one act of taking indecent liberties with the same child is admissible, not for the purpose of proving distinct offenses, but as showing the relationship and familiarity of the parties and as cor-

roborating the testimony of the prosecutrix as to the particular act relied on for conviction. *People* v. *Gray,* 251 Ill. 431.

But even if we assume, as argued by defendant, that the testimony of the prosecutrix is actually lacking in corroboration, still it does not necessarily follow that the judgment of conviction in this case must be reversed, for the applicable rule is that if the testimony of the prosecutrix is clear and convincing it is sufficient to sustain the conviction although her testimony is not corroborated. *People* v. *Pazell,* 399 Ill. 462; *People v. Herzberger,* 372 Ill. 251.

We are unable to find in the record any substantial contradiction of the testimony of Constance. According to her testimony Jeannie, who is defendant's cousin, was present in the basement telling fortunes with cards when the incident charged in the indictment occurred, yet Jeannie was not called to contradict that statement if it were untrue. Constance testified that Judy was in defendant's car with her when he drove to the store to get the onions; that when they reached the store the defendant had Judy go in to get the onions, yet Judy was not called to contradict these statements, if they were untrue.

In support of the first contention made by defendant, he argues that the case of *People* v. *Pazell,* 399 Ill. 462, (where we reversed a conviction for a similar offense alleged to have been committed by defendant Pazell) is clearly applicable to the instant case, pointing to what he regards as similarities, namely: "The lack of corroboration of the prosecutrix's testimony; her failure to tell anyone about the alleged occurrence until five days later; the defendant's denial of the charges at all times; his completely corroborated alibi covering all of the time of the alleged offense; the circumstances under which it was highly improbable and impossible to have occured as disclosed by all of the evidence in the case; the defendant's

excellent background, education and his uncontradicted previous good reputation for morality and chastity and for truth and veracity," claiming this clearly requires a reversal of the conviction.

But we cannot share with defendant that view of the case at bar. Unlike the *Pazell case*, the prosecutrix in this case, as hereinbefore shown, is to some extent corroborated. Also in the case at bar the testimony of the prosecutrix is not contradicted in any substantial manner, whereas the testimony of the prosecutrix in the *Pazell case* was substantially contradicted. In the present case the testimony of the prosecutrix is clear and convincing. We were unable to say that of the testimony of the prosecutrix in the *Pazell case*. In that case the evidence showed that the defendant there was frequently forced to chase the prosecutrix out of his yard because she broke the swings and trampled on the plants in the vegetable garden, which we thought suggested that her accusations may have originated in ulterior motives, while in the case at bar, there is nothing in the record to indicate any motive on the part of Constance except to tell the truth.

There is nothing in the record to show that the relationship between the parties was anything but pleasant. The straightforward testimony of the little girl indicated, as we have already said, no motive except to tell the truth. We find, therefore, that not only is the child's story, in this case, clear and convincing, but also that it is to some extent corroborated (*People* v. *Mueller*, 2 Ill.2d 311,) and where, as here, there is corroboration and the evidence is conflicting the question of the credibility of the witnesses and the weight of the evidence is for the jury. (*People* v. *Ulrich*, 411 Ill. 316.) Hence, we conclude that the first contention of defendant is without merit.

Next, the defendant contends that the court erred in allowing the prosecutor to read from a transcript of the evidence in his closing argument to the jury. It is not

clear from the record that the prosecutor was reading from a transcript. For aught that appears the prosecutor may have been reading from his own minutes of the evidence. All we find in the record regarding this incident is the following:

"What do you think Mrs. Seppers must have told Mrs. Petrie? You remember when Mr. Sherwin questioned Mrs. Petrie and I have here the questions and answers, Mr. Sherwin—

Mr. Sherwin: Pardon me, I am going to object to his reading the transcript, the witness already testified, and this is improper.

Mr. Wosik: 'Who do you mean by "us"'?

The Court: Objection overruled.

Mr. Wosik: 'Who do you mean by "us"'? You said, 'us'—'he had us play with him.'

Answer: 'I mean my daughter, Georgia, Caroline Sepper and Nancie Sepper.' "

Except for the statement made by counsel for defendant there is nothing to indicate that the prosecutor was actually reading from a transcript of the evidence. In any event, we cannot see how the comment upon the few words was prejudicial to defendant or prevented him from receiving substantial justice. We therefore hold that if such reading was error it was not of such magnitude as to be prejudicial.

Following the argument of defendant concerning the above remarks of the prosecutor, the defendant complains of the reference by the prosecutor to other alleged offenses with other children. Such reference was first brought out by defendant in the cross-examination of the mother of the child involved. The mother had asked the child if she had ever seen the defendant undress. The mother testified on cross-examination as set forth in the preceding paragraph. Her answer was entirely responsive to the question and came after a series of questions where the word "us"

was emphasized by the counsel for defendant. Obviously the defendant cannot now be heard to complain of evidence of other offenses committed by the defendant with children other than complaining witness, when such testimony was brought out by defendant upon cross-examination in the first instance.

Furthermore, the written motion for a new trial filed by defendant fails to include as one of the grounds for a new trial the point last urged. For this reason said point is deemed to have been waived and cannot now be urged upon review. *People* v. *Brand,* 415 Ill. 329; *People* v. *Vickers,* 326 Ill. 290; *People* v. *Amore,* 369 Ill. 245.

Next, the defendant contends that the statement of the prosecutor in his closing argument that if the defendant had his deserts for this crime a throttling "would still be too good for him," was improper, inflammatory and grossly prejudicial to defendant. Upon objection made, the court instructed the jury to disregard that comment. Defendant next complains that the prosecutor referred to him as a "moron." We hold this was fair comment, as one who indulges in the practice of taking indecent liberties with a child is, to say the least, so regarded generally.

Defendant also complains about the prosecutor's comment in his closing argument with reference to similar offenses committed by the defendant upon other children. What we have already said about this matter applies with equal force to this complaint. Such evidence having been brought out in this case by the defendant himself upon cross-examination of the witnesses for the prosecution, allowed this to become a subject of fair comment.

Arguments and statements based on the facts appearing in the proof or on legitimate inferences deducible therefrom do not transcend the bounds of legitimate argument. (*People* v. *Hagenow,* 236 Ill. 514; *Crocker* v. *People,* 213 Ill. 287.) And only recently we reaffirmed our previous holdings to the effect that statements of counsel based

upon the facts, or upon legitimate inferences deduced therefrom, do not transcend the bounds of debate and are not to be discountenanced by the courts. It is proper for the prosecuting attorney to reflect unfavorably on the accused and to denounce his wickedness and even indulge in invective. The State's Attorney has the right to dwell on the evil results of crime and to urge fearless administration of the law. (*People* v. *Lindsay,* 412 Ill. 472; *People* v. *Moore,* 9 Ill.2d 224.) While it is improper for the prosecutor to make statements the only effect of which is to inflame the passions or develop the prejudices of the jury without throwing any light upon the issues, he nevertheless has a right to denounce a defendant as guilty of the crime charged if the evidence fairly tends to prove his guilt, and to draw inferences unfavorable to defendant if based on the evidence. It is our conclusion, therefore, that the remarks here complained of were within the bounds of propriety and the proper scope of argument and are not so prejudicial to defendant as to require a reversal of the instant judgment.

Defendant next complains that the court erred in refusing to give to the jury certain instructions tendered by the defendant. These instructions were as follows: (1) "If, from the evidence and under the instructions of the Court, you find that the State has within its knowledge evidence material to the issues in this case and within its power to produce, and further find that the State has failed to produce such evidence, you are instructed that you have a right to consider such failure, if any, as tending to show that the evidence, if produced, would be unfavorable to the State." (2) "Where a conviction of a charge of taking indecent liberties with a child depends upon the testimony of the prosecuting witness and the defendant denies the charge, the evidence of the prosecuting witness must be corroborated by some other evidence, fact or circumstances in the case before the defendant can be convicted."

(3) "The Court instructs the jury that it is incumbent upon the prosecution to prove every material allegation of the indictment as therein charged. Nothing is to be presumed or taken by implication against the defendant. The law presumes him innocent of the crime of which he is charged until he is proven guilty by competent evidence, and if the evidence in this case leaves any reasonable doubt in the minds of the jury as to the defendant's guilt, the law makes it your duty to acquit him."

As to this contention we hold that the court did not err in refusing to give instruction No. 1 because this instruction limited the consideration of the jury to the State's failure to produce evidence. Singling out one side of a case is just as bad as singling out a fact in the case, and this rendered the instruction under discussion improper. *People* v. *Pigatti*, 314 Ill. 626; *People* v. *Durand*, 313 Ill. 582.

The defendant says it was incumbent on the prosecution to produce Jeannie Wohlers who is a cousin of defendant and a daughter of one of the witnesses for him. The prosecution answers that she was merely present in the basement reading fortunes from cards and did not see what defendant was secretly doing to Constance. We think the prosecution is correct in its stand on this point. The State's Attorney is not obliged to call witnesses even though their names are endorsed upon the indictment. Here he may have doubted the veracity of Jeannie. He may have been unwilling to vouch for her due to her relationship to defendant and to one of his witnesses. We believe that it was far more important to the defendant to produce Jeannie as a witness than for the State to do so, for, as we have already stated, if defendant had not returned to the basement nor held Constance on his lap, Jeannie would have known it. Not only would such testimony have helped the defendant a great deal but also such testimony would have affected and materially impaired the

credibility of the prosecutrix. Moreover, it was a privilege of the defendant to call any witness he desired. *People* v. *Kukulski,* 358 Ill. 601.

Instruction No. 2 of the defendant was improper for the reason that it did not come within the purview of the rule laid down in the case of *People* v. *Pazell,* 399 Ill. 462, that there must be corroborating evidence before a conviction can be sustained—*unless the testimony of the prosecuting witness is clear and convincing.* This latter part of the rule was omitted from the proffered instruction, which rendered the instruction bad. The court did not err in refusing to give this instruction.

As to instruction No. 3, the propositions advanced therein were covered by three other instructions given by the court. For this reason the court did not err in refusing to give this instruction.

The record indicates that the jury was fully and properly instructed and that the court did not err in refusing to give the foregoing instructions.

The next and final contention of defendant is that he was unduly restricted in the cross-examination of the prosecutrix.

It would only unduly lengthen this opinion to set forth herein the details upon which defendant bases this contention. Suffice it to say that we have examined the record and considered the subject matter of this complaint and find no indication that the cross-examination of the prosecutrix was unduly restricted by the trial court.

As a general rule the latitude to be allowed in cross-examination of witnesses rests largely in the discretion of the trial court. Such cross-examination should be kept within fair and reasonable limits, and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere. *People* v. *Jones,* 343 Ill. 291; *People* v. *Buskievich,* 330 Ill. 532.

It does not appear to us that the matters complained of were of such a nature as might have resulted in manifest prejudice to the defendant. The prosecutrix was cross-examined at great length by defendant. He was given every opportunity to go into every phase of her direct examination and he was not unreasonably restricted. We find no merit in this complaint.

From a careful consideration of the entire testimony in this case we are unable to say that there is clearly a reasonable and well-founded doubt as to the guilt of the accused and, therefore, this court is not justified in setting aside the verdict of guilty returned by the jury unless we can say that the testimony is so palpably conflicting as to indicate that the verdict was the result of passion or prejudice or that the defendant has not been proved guilty beyond a reasonable doubt, which we cannot say upon the record here. *People* v. *Ulrich,* 411 Ill. 316.

The verdict of the jury finding the defendant guilty is supported by the evidence in the record. The trial court found no fault with it and approved it. Our review of the record reveals no errors sufficient to require a reversal. We believe the defendant was fairly tried and convicted.

For these reasons the judgment of the criminal court of Cook County ought to be and hereby is affirmed.

*Judgment affirmed.*