THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK KENNY, Defendant-Appellant.

First District (4th Division)    No. 76-1249

Opinion filed October 6, 1977.

James Geis and Richard Steck, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Linda Ann Miller, and Mary Ann Callum, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

At the conclusion of a bench trial in the circuit court of Cook County, Frank Kenny, defendant, was found guilty of battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—3) and sentenced to a term of two years probation with psychiatric treatment. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—3(b)(4).) He contends his right to due process of law was violated by the trial court's independent investigation of facts to determine guilt or innocence. On the basis of this alleged violation, defendant asks only that the judgment be reversed and the cause remanded for a new trial. He does not question the sufficiency of the evidence to otherwise support the conviction.

We affirm the trial court.

Defendant was charged by misdemeanor complaint with the shooting of his brother-in-law, Randall Labencki. The record discloses that defendant resided with his wife and their children on the first floor of a two-flat building in Chicago owned by his mother-in-law, Lorraine Labencki. Mrs. Labencki resided on the second floor with her two sons, Joseph Labencki and Randall Labencki. Defendant's wife is the daugher of Mrs. Labencki and the sister of Joseph and Randall.

It appears that on December 9, 1975, the Labencki brothers and other youths had been given permission by Lorraine Labencki to hold a band "jam session" in the basement of the building. Randall Labencki was informed that his sister wished to see him and he went to defendant's apartment. He claimed that defendant lectured him on the noise caused by the music and pushed him out of the apartment, struck him and attempted to push him over a porch rail and down into the basement. Randall told his mother about the incident and she proceeded to defendant's apartment to discuss the matter. She was followed to

defendant's apartment by Randall and his brother, Joseph. Mrs. Labencki entered defendant's apartment and locked the door behind her because she feared her sons might be hurt. As she was explaining to defendant that she had given the boys permission to use the basement in which to practice, defendant suddenly became excited and started throwing things about the apartment. He knocked over a table and kept Mrs. Labencki in a corner holding a table leg in his hand over his head.

The record discloses that the Labencki brothers meanwhile returned to their own apartment. They heard noises from defendant's apartment and returned to the basement where they sought help in the matter. They were later admitted into defendant's apartment by someone who had unlocked the door. As Randall and Joseph Labencki entered the apartment and approached defendant, they were each struck by a single shot fired from a gun held by defendant. The brothers testified they did nothing to provoke defendant prior to the shooting; they did not see the weapon in defendant's possession until after they were shot; and, after the shooting, defendant waived the gun about and asked Joseph if he "wanted it again" in the head.

Defendant testified that he returned home from work on the day in question, to find the floors and walls vibrating and his wife physically sick from the music. Randall Labencki then entered the apartment and the witness spoke to him about the noise. He testified that Randall became arrogant, stating defendant should not tell him what to do in his own house, and that he ordered Randall out of the apartment when the latter cursed him. Defendant forced Randall out, whereupon Randall took a swing at him. Defendant further testified that he then tried to push Randall over the porch railing but was restrained by his wife. He claimed that Randall said "this time you're going to get it" and went upstairs.

Defendant said that his mother-in-law later entered his apartment, locking the door behind her and telling the Labencki brothers to return upstairs and not to break the door. Defendant stated that he told her what had transpired between him and Randall; that she commenced screaming at him; and that he became nervous because the Labencki brothers were outside the door, trying to break it down. He related that because of his nervousness, he threw around some items in the apartment, including the kitchen table. He then took a table leg and started for the door but his mother-in-law struck him on the head with the telephone. He stated he turned toward her with the table leg, holding it over his head as though he was going to strike her, but then threw down the table leg and attempted to leave the apartment. At that point the Labencki brothers and another youth broke into the apartment and came at him. Defendant stated that he was in a narrow area between the furniture as the brothers tried to

reach him. When they were about an arm's length away from him, he attempted to draw a handgun from his rear pocket. Defendant claimed that in the process of drawing the gun from his pocket, it discharged once, a single bullet apparently striking the brothers. Defendant said the apartment door was forced open by the youths and was not unlocked to permit their entrance. He stated they had "promised" him a beating and that he was in fear for his own safety.

After arguments of counsel, the trial court stated that before it "adjudicated" the case, defendant would be referred to the court psychiatrist, in that the incident involved a "family situation" rather than an altercation between strangers. Addressing Lorraine Labencki, the court stated that before giving a decision in the matter it wished to know whether defendant is a danger to society "and whether he is dangerous and what his mental attitude is to you, his wife and these two boys." Counsel for defendant voiced no objection to the referral. The matter was then continued pending submission of the psychiatric report.

The psychiatric report thereafter submitted to the court described defendant as follows: "Passive aggressive personality associated with alcohol and explosive behavior. The patient appears to be inadequated, immature individual who has poor self esteem and poor tolerance for frustration. He is explosive and easily agitated. He tends to minimize his drinking. There is no evidence of psychosis." The report recommended psychiatric treatment as an out-patient, as warranted by the evidence.

The cause was recalled at a later date, and the court refreshed its recollection of the matter, read the psychiatric report, and asserted that the only thing wrong with defendant was his drinking. The court recited that the evidence had been heard and that there had been a referral to a psychiatrist. The court then found defendant guilty as charged and sentenced him to probation. Again, counsel for defendant raised no objection to the court's actions or procedures and in fact, counsel for defendant recommended that a period of probation be imposed so that the defendant could receive psychiatric treatment.

Defendant now contends that the trial court's order for the psychiatric examination and the court's reading of the psychiatric report prior to a finding of guilty constituted an improper independent investigation by the court into his guilt or innocence. We disagree.

■■ It is true that a trial court in a bench trial is limited in its deliberations as to guilt or innocence to the record made at trial. The court cannot rely on its own investigation or private knowledge in determining the facts upon which to make its decision since to do so would be an invasion of the defendant's due process rights. *People v. Wallenberg* (1962), 24 Ill. 2d 350, 181 N.E.2d 143; *People v. Harris* (1974),

57 Ill. 2d 228, 314 N.E.2d 465; *People v. McDonald* (1970), 46 Ill. 2d 92, 263 N.E.2d 75; *People v. Gilbert* (1976), 38 Ill. App. 3d 816, 349 N.E.2d 609.

Defendant contends that the court's direction and order that he submit himself to a psychiatric evaluation was tantamount to a personal and private investigation by the court of the facts surrounding the charge levelled against him. More importantly, defendant asserts that the psychiatric report was used by the court in concluding that he was guilty. We do not believe that the record supports the arguments of defendant.

It is evident from the record that the trial judge had already come to a conclusion as to the defendant's guilt. The trial judge, exhibiting concern, sought a means to resolve a serious interfamily problem. Seeking guidance through the psychiatric discipline as to the scope and nature of the sanction to be imposed was a resource available to the court, and one, to which no objection was voiced by defendant.

We are mindful of the pressures that tend to mold our judicial proceedings towards using the courts to minister to societal ends. Nevertheless, the strength and scope of our system of justice requires that due process rights must prevail regardless of the worthy end sought by other means. However, in this case it is clear that defendant and his counsel allowed the psychiatric evaluation ordered by the court to occur, without objection. Having acquiesced, the defendant cannot now complain.

We note that plain errors or defects affecting substantial rights may be noticed by the appellate court although they were not brought to the attention of the trial court. (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a).) In those situations the general rule of waiver would not apply. See *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Harris* (1965), 33 Ill. 2d 389, 211 N.E.2d 693, *cert. denied* (1966), 383 U.S. 971, 16 L. Ed. 2d 311, 86 S. Ct. 1281.

■■ However, here, the record clearly shows that the guilt of defendant is manifest, and even if it were error for the trial court to have ordered and considered the hearsay psychiatric report, the error complained of, at the point in time when committed, did not affect the substantial rights of the defendant so as to deny him a fair trial. (*Kotteakos v. United States* (1946), 328 U.S. 750, 90 L. Ed. 1557, 66 S. Ct. 1239.) So too, incompetent evidence will be considered harmless, if all that it tends to prove is already proven, without contradiction, by competent evidence. (*People v. Wright* (1965), 65 Ill. App. 2d 23, 212 N.E.2d 126.) The evidence of defendant's guilt being overwhelming, the error can be deemed harmless beyond a reasonable doubt. (*People v. Gill* (1973), 54 Ill. 2d 357, 297 N.E.2d 135, *cert. denied* (1974), 414 U.S. 1144, 39 L. Ed. 2d 100, 94 S. Ct. 897.) At most, from the defendant's standpoint,

the psychiatric report might have been used by the trial court as cumulative evidence of the defendant's guilt, which had been already proven beyond a reasonable doubt.

■■ Finally, we observe that the defendant could have made a timely objection to the court's use of the psychiatric report. Counsel for the defendant could have insisted upon the psychiatrist's presence and his testimony being subjected to the test of cross-examination. Not having voiced an objection and in fact having consented to and participated in the procedure, the protest of the defendant comes much too late.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER, P. J., and JOHNSON, J., concur.