THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DONALD ARBUCKLE, Defendant-Appellant.

Second District   No. 78-366

Opinion filed August 21, 1979.

828

Mary Robinson and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Following a jury trial, defendant, Donald Arbuckle, was found guilty of the offense of indecent liberties with a child (Ill. Rev. Stat. 1975, ch. 38, par. 11—4), and was sentenced to 10 to 20 years imprisonment. Defendant appeals.

The complainant testified that he was born on October 30, 1961, and at the time of trial was 15 years old. He had first met the defendant approximately two or three weeks prior to the opening of school on August 31, 1976. He next saw defendant on a Friday, about 5 p.m.; according to the complainant the date was no earlier than August 13, 1976. On that date the complainant and Curtis McVay met defendant at the

barber shop where defendant was employed. Around 6 p.m. defendant and the two boys left the barber shop in one of defendant's cars. Defendant drove to a liquor store where he purchased two six-packs of beer and a pint of peppermint schnapps. Defendant then drove to an area of the Rock River, near the 15th Avenue Bridge; they stayed on the east bank of the river, about two blocks north of the bridge, where they all drank beer and schnapps. Defendant and McVay went over to another part of the river bank, and the complainant observed defendant sucking on McVay's penis. Though initially refusing, at defendant's command, the complainant pulled down his own pants and defendant sucked on complainant's penis for approximately 20 seconds. Afterwards, defendant drove the boys to a skating rink where they skated while defendant went to a bar. Defendant then drove them to the Hollywood Dining Center and from there they went to defendant's home. The complainant then testified that prior to going to the Hollywood Dining Center, they had stopped at a liquor store to buy more beer and schnapps. At defendant's house, McVay went to sleep on a couch while complainant slept on a chair. The next thing he remembered was waking up the next morning when defendant's parents came downstairs. Over defense objection, complainant testified that defendant's mother had said to defendant, "Why do you keep on bringing these young boys home?" The complainant did not remember whether defendant had made any response. Defendant then drove the boys first to a restaurant for breakfast and then to the barber shop where defendant worked. While defendant went in, McVay and the complainant waited in the car. The complainant fell asleep for one or two hours; when he awoke he went home.

The complainant further testified over defense objections that there had been two other occasions of oral sex between the defendant and him. Though initially he stated that he had had oral sex with defendant, "last week in front of my house," he then stated that each of the sexual contacts occurred approximately one week apart. After the second time, defendant gave him $5; after the third time, $8. On all three occasions the complainant drank beer and schnapps. Over defense objection, the complainant testified that defendant had bought him beer and schnapps a total of four or five times.

On cross-examination, the complainant admitted that in a statement he gave to police on March 11, 1977, he had told them the defendant was driving a white station wagon when he first met him, while at trial he had testified that the car was a two-door Oldsmobile; however, he explained that defendant had had three cars since he had known him and he got them mixed up. The complainant did not remember telling the police on March 11 that McVay and he planned to go skating on a Friday night about three weeks before school started; that he remembered it because

he had purchased a Go-Kart about two weeks before school started and the incident in question occurred one week before he purchased the Go-Kart. Nor was the complainant sure it was a Friday night. He stated that it was two or three weeks prior to the opening of school that he met defendant and it was a week to two weeks after the initial meeting that the incident took place. He did not recall telling police on March 11 that he felt he had seen defendant for at least a month or so prior to the incident.

The complainant was then cross-examined as to the initial statement of the incident which he had given police on December 9, 1976. He admitted telling police at that time that defendant had performed oral sex on him two times, but explained that he had forgotten about the third occasion at the time he made the statement. He further admitted that in the December 9 statement, he made no mention of going to the Hollywood Dining center or of going to defendant's home that night, or the remarks made by defendant's mother, or about going to the barber shop the next day and sleeping in the car.

Further, on cross-examination, the complainant did not recall what kind of car defendant was driving at the time of the incident but thought it was either a white station wagon or a green LTD, but not an Oldsmobile. He testified that he told one of his brothers about the incident either before or after December 9; however, at the preliminary hearing he had testified that he did not tell any of his brothers about the incident. Finally, the complainant testified that while he had been in the pizza shop next to the barber shop, he had not been there with defendant.

On redirect examination, over defense objection, complainant testified that he had told Robert Buse about the incident; further, over defense objection, a portion of complainant's preliminary hearing testimony was read in which the complainant had stated that he told Buse what defendant had done. Then, over defense objection, the State introduced the complainant's March 11 statement. The complainant testified that in that statement he did tell police of the remark made by defendant's mother; however, he did not know whether he had told them about going to the Hollywood Dining Center or about going to the liquor store the second time. The complainant testified that in his December 9 statement he had told the police that they had stopped to get something to eat, but he did not say where they ate.

The State then introduced the testimony of several witnesses who had observed the complainant in defendant's company. John Frisella, who owned the pizza restaurant next to the barber shop where defendant was employed, testified that he had seen the complainant in the restaurant with another boy. The witness had observed the complainant visiting defendant several times and also saw the complainant and the other boy

waiting outside the restaurant by defendant's car. Gloria Ohnstead, a waitress at the Emporium Restaurant in Rockford, testified that the complainant and another boy had been in the restaurant with defendant on approximately six or seven different occasions in August of 1976. Three barbers who worked with defendant testified that a number of young boys, including the complainant, had visited defendant at the barber shop several times a week.

The defense presented the testimony of Peter Vitale, a youth officer with the Rockford Police Department, who had taken the December 9 statement from the complainant. In that statement the complainant did not tell the officer about going to the Hollywood Dining Center, about going to defendant's home, or about the remark made by defendant's mother; nor did he mention going to the barber shop the next morning and sleeping in defendant's car. Further, the complainant had told him that he had oral sex with defendant on two occasions. On cross-examination, Vitale stated the complainant had trouble remembering events and he had tried to prompt him. Vitale never asked the complainant whether he had gone to defendant's home or whether defendant's mother had made any remarks to defendant.

Bill Latham, owner of B & J Auto Sales in Rockford, testified that defendant had purchased a 1966 green Ford LTD from him on August 30, 1976, and that the car was returned on October 20, 1976, because defendant could not pay for it. Afterwards, the witness saw defendant in a white Ford station wagon.

The defense then presented the testimony of three boys that they had been on an overnight fishing trip with defendant in August of 1976. Two of the boys identified the date of the trip as August 13, 1976.

The first issue raised on appeal is whether the trial court erred in denying defendant's motion for a continuance. Prior to trial, the prosecutor informed the trial court and defense counsel that Curtis McVay, a material witness in the case, had escaped from custody. Defense counsel requested a continuance, arguing that McVay's escape hampered the defense in that if the State did not call McVay as a witness, the defense might have called McVay to testify or at least commented on the State's failure to call him, or if the State had called McVay to testify, defense counsel would have had a chance to cross-examine him. Defense counsel, however, had not subpoenaed McVay as a witness and the trial court denied the motion for continuance. Defense counsel then stated that he had assumed the State's subpoena had been properly served and that McVay would have been available to the defense as well. He argued that the prosecutor led him to believe that the State was going to have McVay testify. However, the prosecutor maintained that he had never told defense counsel that McVay would testify, and that in fact he had told

defense counsel that he did not know whether or not he wanted to call McVay as a witness.

■■ Section 14—4(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—4(e)) provides that all motions for continuance are addressed to the sound discretion of the trial court. Before it can be said that such a motion has been improperly denied, it must appear that the refusal to grant additional time has in some manner embarrassed the accused in his defense and thereby prejudiced his rights. (*People v. Wilson* (1963), 29 Ill. 2d 82, 193 N.E.2d 449.) Whether the denial of a continuance violates the substantive rights of a defendant must be determined on a case-by-case basis. *People v. Lott* (1977), 66 Ill. 2d 290, 362 N.E.2d 312.

Apparently defense counsel desired to have McVay available as a witness, because a comparison between pretrial statements of McVay and the complainant and the transcript of the complainant's preliminary hearing testimony revealed substantial discrepancies. However, defendant did not issue a subpoena for McVay, choosing to rely on the fact that the state had issued a subpoena for him. The State, however, was unsure that it would call McVay as a witness and the prosecutor maintained that he had informed defense counsel of that fact. Further, during argument on the motion for continuance, defense counsel indicated that he might have only commented on the State's failure to call McVay as a witness.

■■ ■ Since both sides appeared unsure as to whether they would call McVay to testify, his importance to the case is a matter of speculation at best, and it can not be said that the denial of the continuance hampered the defendant's case or prejudiced the defendant's rights. Further, where there is no reasonable expectation that a witness will be available in the near future the motion for continuance should be denied. (*People v. Goodrich* (1966), 73 Ill. App. 2d 196, 218 N.E.2d 794 (abstract); *People v. Hudson* (1968), 97 Ill. App. 2d 362, 240 N.E.2d 156.) Here, defense counsel made no showing that there was any reasonable expectation of obtaining McVay's presence at trial. We therefore conclude that the denial of the continuance was not an abuse of discretion.

■■ Defendant contends that he was denied a fair trial by the State's efforts to bolster the complainant's testimony through use of his prior consistent statements, the testimony of other witnesses and the remarks of the prosecutor during closing argument. Under cross-examination, the complainant admitted that he had testified to a number of things which were not contained in his December 9 statement. The statement did not mention that the complainant, McVay and defendant had gone to the Hollywood Dining Center on the night in question, that they had stayed at defendant's home that night or about defendant's mother's remark to

defendant. On redirect examination, over defense objections, the prosecutor introduced the complainant's March 11 statement in which the complainant testified he had told the police about defendant's mother's remark.

"[A] witness may not testify as to statements he made out of court for the purpose of corroborating his testimony given at the trial relative to the same subject. [Citations.] However, to rebut a charge or an inference that the witness is motivated to testify falsely or that his testimony is of recent fabrication, evidence is admissible that he told the same story before the motive came into existence or before the time of the alleged fabrication. [Citations.]" (*People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363 371.)

In *People v. Buckley* (1976), 43 Ill. App. 3d 53, 356 N.E.2d 1113, this court found that the sole purpose in introducing the out-of-court consistent statements was to bolster up or corroborate the in-court testimony of the witness and found that this improper bolstering so prejudiced the defendant there that he was deprived of a fair trial. Here, any fabrication by the complainant would have occurred subsequent to December 9 and therefore any statement made by him after that date would be suspect. Clearly, the statement made by him on March 11 could not rebut an inference that the complainant had fabricated testimony subsequent to December 9.

■■ We would note that on cross-examination, Officer Vitale testified that he did not ask the complainant if he had gone to defendant's home or if defendant's mother had made any remark. Therefore, the December 9 statement reflects an omission as opposed to an inconsistency from the March 11 statement. Assuming however, that the redirect testimony constituted error, such error has been held to be harmless where it did not have a direct bearing on a defendant's guilt or innocence. (See *People v. Gray* (1977), 47 Ill. App. 3d 1026, 365 N.E.2d 501.) The comment by defendant's mother did not directly relate to the incident involving the complainant here and was by no means the most incriminating piece of evidence against defendant. Therefore, we conclude that any error which occurred was harmless beyond a reasonable doubt.

The complainant was also permitted to testify on redirect, over defense objection, that he had told Robert Buse about the incident with defendant. The state was also permitted to read to the jury a portion of the complainant's preliminary hearing testimony in which the complainant stated that he had told Buse of the incident with defendant.

It has been held that the admission of evidence of a prompt complaint is reversible error in an indecent liberties with a child case. (*People v. Romano* (1923), 306 Ill. 502, 138 N.E. 169.) That principle was

recently reaffirmed by this court in *People v. Darby* (1978), 58 Ill. App. 3d 294, 374 N.E.2d 229. However, in *Darby,* the issue before the court was whether the admission of such a complaint was reversible error where a defendant was charged with both indecent liberties and rape, where such a complaint is admissible. In holding the evidence properly admitted, this court merely recited the rule in *Romano.*

■■ Where it appears that errors in the record could not have reasonably affected the result, the errors with respect to this testimony, even those of constitutional magnitude, are harmless and the conviction should be affirmed. (*People v. Castillo* (1976), 40 Ill. App. 3d 413, 352 N.E.2d 340.) In *People v. Murphy* (1977), 47 Ill. App. 3d 278, 361 N.E.2d 842, defendant was charged with rape and indecent liberties with a child and was found guilty of indecent liberties. On appeal defendant contended, *inter alia,* that the complainant's mother was allowed to testify in some detail regarding her daughter's complaint to her. While concluding that the issue was waived for failure to object to the testimony, this court stated that the admission of the testimony was at best harmless error in view of the evidence at trial. Similarly here, in view of the evidence against the defendant, the testimony played a minor role in the State's case, and we do not feel its admission could have affected the jury's verdict. We therefore hold that its admission under those circumstances was harmless error.

■■ ■ Further, defendant contends that a long line of witnesses were brought before the jury to demonstrate that the complainant was a credible witness by testifying to matters totally unrelated to the offense. However, a great deal of that testimony indicated that the complainant was in the company of the defendant on several occasions. Even if error, incompetent evidence will be considered harmless if all it tends to prove is already proved, without contradiction, by competent evidence. (*People v. Kenny* (1977), 53 Ill. App. 3d 872, 369 N.E.2d 116.) Here the defense made no attempt to contradict testimony that the defendant and the complainant were seen together at various places, and any error occurring in this regard is therefore harmless. Nor was there any objection raised to that portion of the prosecutor's rebuttal argument referred to by the defense on this issue.

Next, defendant contends that the trial court erred in admitting evidence which, defendant alleges, created an innuendo that defendant had committed indecent liberties on boys other than the complainant. While defendant concedes that the State's witnesses were never directly asked if defendant engaged in indecent liberties with other boys, several of the questions and responses suggested such activity on defendant's part: the trial court admitted evidence that defendant frequently brought young boys home and was frequently visited by young boys at his place

of employment; that he was seen in the company of young boys in other places and that he gave them money and bought them things. Further, that the State, in closing argument, made repeated references to defendant as a "pervert."

Concerning the references to defendant as a "pervert," those references will be discussed later in the opinion. Defendant relies on *People v. Pazell* (1948), 399 Ill. 462, 78 N.E.2d 212. However, in *Pazell* the defendant was specifically asked on cross-examination by the State if he had ever had little girls in his house. Defendant denied that fact, and on rebuttal the State introduced the testimony of two young girls who stated they had been in defendant's house. The *Pazell* court stated that it was improper and prejudicial in indecent liberties cases to introduce evidence showing a defendant had been guilty of similar practices upon other girls. While there the prosecutor did not specifically examine defendant or the girls as to whether defendant had taken indecent liberties with them, a strong prejudicial innuendo was created which could not be eradicated from the minds of the jury and required reversal of defendant's conviction and remand for a new trial.

■■ ■ In the case before us, the testimony was confined to reports of defendant in the company of young boys and occasionally buying them things. This court would note that the friendship of a young boy and an older man does not raise the same suspicions, without more, that the relationship of an older man and a young girl does. Thus, in this case, whether a prejudicial innuendo was created would be pure speculation on our parts. However, assuming, arguendo, that such testimony was error, we recently held in *People v. Thingvold* (1978), 66 Ill. App. 3d 1002, 384 N.E.2d 489, that the admission of a statement by defendant to the police referring to other incidences with young girls and defendant's confinement to Menard for molesting a young girl was harmless error. Like the situation here, the testimony in substance was a minimal portion of the evidence against defendant, and the evidence of guilt was overwhelming. Therefore, we find any error here harmless beyond a reasonable doubt.

Defendant contends that the trial court erred in admitting evidence of other crimes allegedly committed by defendant. The complainant was permitted to testify, over defense objection, that there had been other occasions of oral sex between defendant and him. The trial court in overruling the objection found that the evidence was admissible to show a relationship between the parties and to corroborate the complainant's testimony.

■■ Evidence of more than one act of taking indecent liberties with the same child is admissible, not for the purpose of proving distinct offenses, but as showing the relationship and familiarity of the parties and as

corroborating the testimony of the victim as to the particular act relied on for conviction. *People v. Halteman* (1956), 10 Ill. 2d 74, 79-80, 139 N.E.2d 286, 291.

■■■■ Defendant argues that in the instant case, whether or not the parties knew each other or had a continuing relationship was not at issue; that in fact defendant never denied knowing the complainant and there was no question as to the complainant's ability to recognize or identify the defendant. While there is apparently no question that the parties knew each other, the evidence was admissible to show how intimate the relationship was. Further, while the cases for the most part involve admission of prior acts as corroboration, we see no reason not to extend the same rule to evidence of subsequent acts, as corroborating the testimony of the complainant. Finally, where the competent evidence shows beyond a reasonable doubt that a defendant is guilty, an error in the admission of evidence of other offenses does not call for reversal when as here, the jury could not have reasonably found defendant not guilty. *People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347.

Finally, defendant contends that the prosecutor's closing argument deprived him of a fair trial. Defendant argues, first, that the prosecutor's references in rebuttal to defendant as a "pervert" denied him a fair trial.

In his motion for a new trial, defendant argued that the improper comments of the prosecutor deprived him of a fair trial. Addressing the defendant's argument, the trial court stated:

"* * * I would think that Mr. Gemignani's argument was rather heavy and quite loud. I would think that his remark about alibi is not the only defense—I remember it, and the shouting at the defendant, the width of counsel table when he got up on rebuttal argument; it offended the decorum of the court and the sensitivity of the people but I don't believe it was error unless the jury was overwhelmed by Mr. Gemignani's beliefs and I don't believe that that's the case here."

We agree with defendant that the proper test for determining whether an improper closing argument deprived a defendant of a fair trial is whether the jury's verdict may have been influenced by the improper remarks. (*People v. Davis* (1970), 46 Ill. 2d 554, 264 N.E.2d 140.) Where the reviewing court finds that the remarks may have contributed to the conviction, the judgment must be reversed. *People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.

The State argues that the prosecutor was merely casting aspersions upon defendant's character which is a legitimate tactic in a prosecutor's closing argument. In such a situation, the prosecutor may reflect unfavorably upon the defendant, denounce his wickedness and even

indulge in invective. *People v. Delgado* (1975), 30 Ill. App. 3d 890, 333 N.E.2d 633.

██ Further, while it may be improper to disparage a defendant, it is not prejudicial error if such a characterization was based on the evidence or a reasonable inference therefrom. (*People v. Smith* (1977), 52 Ill. App. 3d 583, 367 N.E.2d 756.) The State maintains that as the evidence at trial revealed that defendant was not of the highest moral caliber, prosecutorial comment on that fact could not be the basis for reversal.

██ First of all, this court would agree with the remarks made by the trial court reflecting on the prosecutor's rebuttal argument. We would also add our own strong condemnation of the tactics and the language used against this defendant by the prosecutor during the rebuttal argument. Litigants in our courtrooms are to appeal to justice and not to the misguided emotional fervor of a mob. Nevertheless, under the test enunciated in *Davis*, we conclude that the jury's verdict was not influenced by the prosecutor's argument in that regard.

The defendant also contends that the prosecutor's references to defendant's failure to testify violated defendant's constitutional and statutory privilege against self-incrimination. During his closing argument, defense counsel had stated,

"Mr. Gemignani [the prosecutor] says that [complainant's] allegation about sucking on his penis, about my client sucking on his penis, is not denied. My client pled not guilty. That shouts I didn't do it. * * *"

Apparently, in an attempt to paraphrase defense counsel's comments, the prosecutor in his rebuttal argument stated:

["Mr. Gemignani:] [Complainant] is the only person who said my client committed this act. [Complainant] is the only person who said my client did this but nobody has said he did not. You see, for every action there is a reaction. For every remark, there is a re-remark.

MR. KING: Judge, I object. That is not the case. My client has denied his guilt.

THE COURT: Let the record so show.

MR. GEMIGNANI: I didn't hear anybody shout like he said he shouted he is not guilty before you people. I didn't hear that. You must look at all of the evidence. * * *"

Further on in the rebuttal argument, the prosecutor stated:

"[Mr. Gemignani:] * * * Nobody told us when he bought that station wagon. Nobody told us whether or not he still has the green LTD. No one told us whether he still has the Oldsmobile. You don't have that testimony here. He may have had three or four cars at the

same time. Watch that testimony very carefully. Watch it very carefully. Alibi is not the only way to defend yourself against a case like this.

MR. KING: I object to that Judge. I want the record to reflect that objection.

THE COURT: Let the record so show. * * *"

■■ In *People v. White* (1977), 48 Ill. App. 3d 907, 363 N.E.2d 408, this court held that a test to determine whether a defendant's right not to testify has been violated by the prosecutor's comments is whether the remarks were intended or calculated to direct attention to the defendant's neglect to avail himself of his legal right to testify. Further, this court stated that while a prosecutor cannot, directly or indirectly, comment on the failure of a defendant to testify, he can comment on the uncontradicted nature of the evidence; he may do so even where the only person who could have contradicted that evidence was the defendant himself.

■■ As was the case in *White*, no direct reference was made to the fact that defendant did not testify. Further, in view of the defense counsel's argument quoted above, the prosecutor's comments appear to be a legitimate response to defense counsel's statements. We conclude that the remarks were not intended nor calculated to focus the jury's attention on defendant's failure to testify.

Finally, convictions are not reversed on the ground of improper conduct when evidence of guilt is clear and convincing, unless it appears that the remarks may have influenced the result, or that the verdict could have been otherwise had the remarks not been made. (*People v. Naujokas* (1962), 25 Ill. 2d 32, 182 N.E.2d 700.) That does not appear to be the case here.

For all the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.